2012 Ark. App. 27

**Rebecca Jean Meritt WATKINS, Appellant**

v.

**Floyd Charles WATKINS, Appellee.**

**No. CA 10–940.**

Court of Appeals of Arkansas.

Jan. 4, 2012.

Charles P. Allen, West Helena, AR, Anne Elizabeth Orsi, Little Rock, AR, for appellant.

Louis Anthony Etoch, Helena, AR, for appellee.

WAYMOND M. BROWN, Judge.

Rebecca Watkins brings this appeal from the order of the Phillips County Circuit Court on the property division following her divorce from appellee Floyd "Chuck" Watkins. We do not address the merits of Rebecca's arguments but, instead, remand the case to the circuit court for the purpose of having the court give a more comprehensive explanation of why it divided the parties' marital property unequally.

This is the parties' second marriage to each other. There were no children born to the parties; however, both had children by prior marriages. They first married in November 2000 and divorced in September 2002. Prior to the marriage, Rebecca received certain real property from her family. When the parties divorced, Rebecca was awarded the parties' mobile home, and she was ordered to pay the debt on the home. No specific mention was made of the real property. Chuck was awarded a four wheeler.

The parties remarried in April 2004 and separated in March 2008. On March 19, 2008, Rebecca filed her complaint seeking a divorce, a return of her nonmarital real property, and division of the marital debts. Chuck filed an answer and counterclaim. Both parties amended their pleadings after an attempted reconciliation failed in August 2008.

The case proceeded to trial on June 30, 2009. The major issues were the status of approximately $82,500 in funds that Chuck had deposited into bank accounts titled in the names of both parties before withdrawing those funds just prior to the parties' separation; the status of funds Chuck received from the sale of a piece of farm equipment; and the status of a shop building Chuck erected on the real property Rebecca owned prior to the first marriage. The evidence showed that in 2006 the parties agreed to build a shop on the real property Rebecca acquired prior to the parties' first marriage. Chuck testified that he had no other location from which to operate his business. According to Rebecca, the parties separated in March 2008 and Chuck removed $82,520 out of a marital account and transferred it to another bank. Chuck asserted that he kept his business funds separate from Rebecca's funds. He admitted that when the parties separated in March 2008, he took $82,500 out of what he called a business account titled in both parties' names "to avoid any kind of problems with Rebecca and the money." The money was redeposited into an account with both names when the parties reconciled. At the time of their final separation, the account balance was approximately $66,000. Two months later that balance had been reduced to $252. Chuck also acknowledged using $32,000 in marital funds to pay off the debt on his cotton picker before selling it for a $4,000 loss. Chuck further testified that he purchased a new car for cash approximately one month prior to trial.

On August 13, 2009, the circuit court issued a letter opinion that granted Rebecca a divorce. Chuck was awarded the new vehicle as his separate property. The court also classified certain personal property as marital property, including the shop building, a tractor, and other farm equipment. The court further ordered that if the parties were unable to agree upon a division of the marital property, that property was to be sold at a public

auction conducted by the clerk. The court concluded that, under the circumstances and in consideration of the factors listed in Ark.Code Ann. § 9–12–315(A)(1),[1] especially Chuck's occupation, it would be equitable to give Chuck a life estate in the building and in the land immediately surrounding it. The court concluded by stating that any asset not specifically referenced would be the separate property of the party in possession.

The court issued a clarification letter opinion on September 23, 2009. The court emphasized that the shop would not be sold because Chuck was awarded a life estate in that property. The court also ruled that the equipment Chuck purchased for the business would be his separate property.

On October 20, 2009, Rebecca filed a motion alleging that Chuck had purchased real property on October 1, 2009, for $50,000 cash. She asserted that this was marital property and sought a division. In response, Chuck asserted that the division of the property had already been resolved. After considering the parties' posttrial briefs, the circuit court issued a third letter opinion dated February 18, 2010. The court assumed that Rebecca was correct and that the property was marital property. Nevertheless, the court awarded the real property to Chuck as his separate property. In doing so, the court stated that it had considered two of the factors listed in section 9–12–315, including the estate, liabilities, needs of each party, and the contributions of each party in the acquisition of the property. The court found that neither party contributed to the needs of the other party after their separation. Also, the court noted that the property was purchased with income from Chuck's nonmarital business and with funds from his father.

The court's divorce decree, which incorporated the three earlier letter opinions, was entered on February 22, 2010. This appeal followed.

The statutory authority for a circuit court's division of property upon divorce is set forth in Arkansas Code Annotated section 9–12–315. Section 9–12–315(a) gives a court the discretion to divide equitably both marital and non-marital property after considering certain stated factors[2] in order to achieve an equitable distribution.[3] The overriding purpose of the property-division statute is to enable the court to make a division of property that is fair and equitable under the circumstances.[4] With respect to the division of property in a divorce case, we review the circuit court's findings of fact and affirm them unless they are clearly erroneous or against the preponderance of the evidence.[5] A circuit court's finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm

---

1. (Repl.2009).

2. Those factors are (i) The length of the marriage; (ii) Age, health, and station in life of the parties; (iii) Occupation of the parties; (iv) Amount and sources of income; (v) Vocational skills; (vi) Employability; (vii) Estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income; (viii) Contribution of each party in acquisition, preservation, or appreciation of marital property, including services as a homemaker; and (ix) The federal income tax consequences of the court's division of property.

3. *Box v. Box*, 312 Ark. 550, 851 S.W.2d 437 (1993); *Williford v. Williford*, 280 Ark. 71, 655 S.W.2d 398 (1983).

4. *Baxley v. Baxley*, 86 Ark.App. 200, 167 S.W.3d 158 (2004).

5. *Id.*

conviction that a mistake has been committed.[6] In reviewing a circuit court's findings, we defer to the circuit judge's superior position to determine the credibility of witnesses and the weight to be accorded to their testimony.[7] We note that the statute does not compel mathematical precision in the distribution of property; it simply requires that marital property be distributed equitably.[8]

While the circuit court did not specifically find that it was making an unequal division of marital property, it appears that the result was an unequal division. However, the order failed to include findings explaining why the factors supported an unequal division of marital property.[9]

We begin with the circuit court's award of a life estate to Chuck in Rebecca's nonmarital real property. Here, the circuit court stated that it considered the statutory factors and concluded that it was equitable to award Chuck a life estate. However, the circuit court did not address various other concerns arising from such an award, such as a description of the property immediately surrounding the shop building or the fact that Chuck purchased a new home and may no longer need the shop on Rebecca's property to operate his business. These concerns should be addressed on remand.

Likewise, the circuit court did not specifically address Rebecca's contention that Chuck took marital funds for his personal use and should compensate her for her share. We surmise that the circuit court believed that it had addressed the issue by its statement in the February 18, 2010 letter opinion that Rebecca was attempting to raise issues that had already been decided in the earlier letter opinions. The only other possible disposition of the funds was the circuit court's catch-all provision in its August 13, 2009 letter opinion when it stated that "[a]ny property asset not specifically referenced above shall remain the separate property of the party now [in possession]."

Rebecca relies on the presumption that property is marital property that arises when nonmarital property or funds are titled or deposited into couple's joint accounts.[10] Both parties testified that the money was in an account that was titled in both names. Chuck argues that the money is his separate property because it is excluded from the definition of "marital property" as being the increase in value of property acquired prior to marriage or income from property owned prior to the marriage.[11] However, the fact that Chuck was awarded the business in the parties' first divorce and it was his separate property does not mean that the earnings he derived from that business during the second marriage were not marital property. Such earnings are marital property.[12] Here, the circuit court failed to explain either how Chuck rebutted the presumption or the factors it considered in deciding upon an unequal division of the funds.

6. *Id.*

7. *Id.*

8. *Id.*

9. Ark.Code Ann. § 9–12–315(a)(1)(B); *Young v. Young,* 288 Ark. 33, 701 S.W.2d 369 (1986) (holding that when a trial court makes an unequal division of marital property, it must state its reasons for doing so).

10. *See McKay v. McKay,* 340 Ark. 171, 8 S.W.3d 525 (2000); *Lofton v. Lofton,* 23 Ark. App. 203, 745 S.W.2d 635 (1988).

11. Ark.Code Ann. § 9–12–315(b)(5), (7).

12. *Box,* 312 Ark. at 554, 851 S.W.2d at 440; *Davis v. Davis,* 79 Ark.App. 178, 84 S.W.3d 447 (2002).

Rebecca also argues that the circuit court erred in not awarding her a share of the vehicle and real property Chuck purchased after the parties' separation but prior to the entry of the circuit court's decree. Any property acquired after separation but prior to the entry of a divorce decree is marital property.[13] While there is no requirement that each party receive a share of each item of marital property, an explanation for such unequal division is required.[14] The court did somewhat explain its reasons, finding that neither party contributed to the needs of the other following their separation. The court also considered the fact that the property was purchased with funds from Chuck's nonmarital business. However, as discussed above, the income Chuck earned during the marriage was marital property even though the business was his separate property.

In the absence of such an explanation, and in light of the presumption that marital property will be divided equally,[15] we must remand for entry of an order that demonstrates proper consideration of the statutory factors.[16]

Remanded for further proceedings consistent with this opinion.

WYNNE and ABRAMSON, JJ., agree.

---

13. *See Taylor v. Taylor*, 369 Ark. 31, 250 S.W.3d 232 (2007); *Cavin v. Cavin*, 308 Ark. 109, 823 S.W.2d 843 (1992); *Franklin v. Franklin*, 25 Ark.App. 287, 758 S.W.2d 7 (1988); *Speer v. Speer*, 18 Ark.App. 186, 712 S.W.2d 659 (1986).

14. *See Harvey v. Harvey*, 295 Ark. 102, 747 S.W.2d 89 (1988); *Cole v. Cole*, 82 Ark.App. 47, 110 S.W.3d 310 (2003) *(Cole I)*.

15. Ark.Code Ann. § 9–12–315(a)(1)(A).

16. *See Harvey v. Harvey*, 295 Ark. 102, 747 S.W.2d 89 (1988); *Baxley, supra.*