2012 Ark. App. 208
**Michael WADLEY, Appellant**

v.

**Elizabeth Mae WADLEY, Appellee.**

**No. CA 11–1047.**

Court of Appeals of Arkansas.

March 14, 2012.

---

Paul N. Ford, Jonesboro, for appellant.

Gary B. Rogers and Monte D. Estes, Little Rock, counsel for the appellee.

JOHN B. ROBBINS, Judge.

This appeal concerns a divorce decree entered by the White County Circuit Court regarding appellant Dr. Michael Wadley and appellee Elizabeth "Beth" M. Wadley. We dismissed the initial direct appeal and cross-appeal of their November 2009 divorce decree because it was not a final, appealable order. *Wadley v. Wadley,* 2010 Ark. App. 733, 2010 WL 4345685. The trial court subsequently entered an amended divorce decree on July 27, 2011, resolving all outstanding issues. Michael appeals, contending that (1) the trial court abused its discretion in ordering him to pay permanent alimony of $2000 per month, and (2) the trial court clearly erred in determining the marital value of the veterinary clinic and in awarding Beth $270,000 as her interest in it. Beth cross-appeals, contending that the trial court clearly erred in failing to award her half of the "equity" gained during the marriage in a certificate of deposit acquired by Michael. Although no reversible error is demonstrated on direct appeal, we find merit in the cross-appeal, necessitating reversal and remand.

Arkansas Code Annotated section 9–12–315 (Repl.2009) requires that the trial court equally divide marital property between the parties unless the trial court finds such a distribution inequitable. A trial court is required to divide the marital estate in a manner that is equitable, but we do not require mathematical precision

in doing so. *Coatney v. Coatney,* 2010 Ark. App. 262, 377 S.W.3d 381. Allocation of marital debt must be considered in the context of the distribution of all the parties' property. *Bellamy v. Bellamy,* 2011 Ark. App. 433, 2011 WL 2395205. Appeals of domestic-relations proceedings are reviewed de novo. *Hernandez v. Hernandez,* 371 Ark. 323, 265 S.W.3d 746 (2007). We will not substitute our opinion as to what exact interest each party should have; we will decide only if the order is clearly wrong. *Bellamy, supra.*

In this case, the parties married in 1990, separated in 2007, and were divorced by decree filed in November 2009 on the basis of eighteen months of separation. The trial court later amended the decree in July 2011 to make it a final order for purposes of appeal. No children were born of the marriage, but assets and liabilities needed to be divided. Michael was a practicing veterinarian; Beth was a long-time teacher. They made their home in Searcy, Arkansas.

Beth retained her non-marital property, which included specific pieces of furniture, specific pieces of dishware, a strand of pearls, and a ring. The trial court found that a certificate of deposit held in Beth's and her mother's names along with her family's farm subsidies were not marital and were not subject to division. Beth retained a 2008 Ford Explorer along with the responsibility for any indebtedness on it, which at the time of the hearing was approximately $19,000. She retained her half of the proceeds from the sale of the marital home.

Michael retained a Kawasaki motorcycle and an airplane along with the responsibility for any indebtedness on them, approximately $2840 and $22,600 respectively. Michael was to pay Beth $8000 for her interest in the value of the contents of their hangar and all other personal posses-

sions that were marital. He owed approximately $18,350 on the hangar. He retained his Centennial Bank account that held approximately $20,000, the source of which was his portion of the marital-home's sale proceeds.

The parties sold a 1964 Ford Thunderbird and divided the $4000 proceeds. The parties equally divided their 2008 federal and state tax refunds (approximate aggregate sum of $11,000). They equally divided several financial accounts: a joint checking and savings account (approximate aggregate value of $950), the marital accrued value of Beth's Missouri and Arkansas teacher retirement accounts (approximate aggregate value of $53,000), Michael's two IRA accounts (approximate aggregate value of $49,600), and Beth's ING account (approximate value of $10,900).

The decree divided the Wadley & Watson Veterinary Clinic by allowing Michael to retain their marital interest in the corporate stock, the real property where the clinic was located, the clinic assets, and the good will in exchange for his payment of $270,000 to Beth. The trial court awarded Beth $2000 per month permanent alimony from and after November 2009, although it would terminate at her remarriage or either of their deaths. A certificate of deposit held in Michael's name, valued at approximately $200,000, was determined to be comprised of money he borrowed from First Security Bank during the marriage, the debt for which Michael would be solely liable. The matters discussed in this paragraph are at issue on direct and cross-appeal.

On direct appeal, Michael argues first that the trial court abused its discretion in awarding Beth $2000 per month in permanent alimony. We disagree. The purpose of alimony is to rectify the economic imbalance in the earning power and standard of living of the divorcing parties in light of the particular facts of each case. *Cole v. Cole*, 82 Ark.App. 47, 110 S.W.3d 310 (2003). The primary factors to consider are the financial need of one spouse and the other spouse's ability to pay. *Dew v. Dew*, 2012 Ark. App. 122, 390 S.W.3d 764. Secondary factors are the financial circumstances of both parties, the amount and nature of current and anticipated income of the parties, the extent and nature of the resources and assets of both parties, and the earning capacity and ability of both parties. *See Kuchmas v. Kuchmas*, 368 Ark. 43, 243 S.W.3d 270 (2006). Other factors include the parties' past standard of living and the duration of the marriage. *Page v. Page*, 2010 Ark. App. 188, 373 S.W.3d 408. The trial court is vested with great discretion regarding alimony; it is not set upon a mathematical formula because the need for flexibility outweighs the need for relative certainty. *Id.* Notably, alimony is generally taxable income to the recipient and deductible to the payor. *See* Ark.Code Ann. §§ 26–51–404 and –417 (Repl.1997).

Michael contends that viewing the overall distribution, Beth was given significant temporary alimony pending the final order and retained significant assets at the conclusion. He points to the fact that Beth continued her teaching profession before and after they married, and at the end of their marriage she was earning approximately $42,000 annually. Michael contends that Beth does not have a need for alimony, especially not any amount beyond the $1650 per month she claimed as a monthly-expense deficit, and certainly not permanently. He adds that he borrowed $200,000 to service the payments he is required to tender to Beth, which necessitates $4000 in monthly payments on that debt, indicating his less-than-optimum ability to pay this alimony.

■ Michael correctly points out that court-ordered alimony is always subject to modification upon a material change in circumstances. *See Cole, supra.* Beth concedes this long-standing Arkansas law on alimony. Thus, Michael does not suffer prejudice regarding the *permanent* award where appropriate material changes in circumstances may lead to a decrease or termination by the trial court.

With regard to the amount, we are not persuaded that the trial court clearly erred. In her brief to the trial court, Beth requested permanent alimony of $3000 per month but at minimum $1650 per month. Michael is a veterinarian earning approximately $195,000 annually; he was earning a net monthly income of $7740 and occasional bonus pay at the time of the hearing. His clinic pays for his vehicle and necessary gasoline in addition to life/health/disability/automobile insurance premiums. Beth supported them both for the four years he attended veterinary school. Her testimony indicated a current deficit of $1650 each month. On de novo review of the evidence, with obvious earning disparity between the parties and the approximately twenty-year length of the marriage, we cannot say that the trial court abused its discretion in awarding her $2000 per month in alimony. *Dew, supra; Page, supra.*

■ Next, Michael argues that the trial court erred in its valuation of the marital interest in the veterinary clinic, resulting in Beth receiving basically the entirety of the marital value. He asserts primarily that the trial court ignored multiple failings of Beth's CPA in rendering an opinion of the marital value. We disagree that Michael has demonstrated clear error.

The parties presented competing professional CPA opinions of the marital value of the veterinary practice. Both CPAs agreed that valuation of this sort is not an exact science and that valuations are given in a range; they each took issue with the other's methodology and figures. His CPA [1] approximated the marital value between $252,600 and $325,000 after evaluating pertinent records from 2003 to 2008 and applying more than one approved method of analysis. Her CPA [2] gave an opinion that the marital value of the veterinary clinic was much higher, approximately $525,000 to $600,000; he stated that the business should not be sold on the current open market for less than $1.6 million. The primary difference of opinion related to the entity's good will and computation of excess earnings.

The trial court obviously gave greater weight to the opinion of her CPA when it awarded her $270,000 as her half in marital value. We defer to the trial court in matters of determining the weight and probative value of expert testimony. *Skokos v. Skokos,* 344 Ark. 420, 40 S.W.3d 768 (2001). Michael attempts to pick apart the numerical values used by Beth's CPA as a basis for reversal, but this is not persuasive. The trial court stated in a letter to counsel that it rendered its own finding on marital value based upon the formulas used by Beth's CPA "but not all of his figures." On de novo review of the evidence before the trial court, and noting that the marital value fell within the range provided by expert testimony, we cannot say that the trial court clearly erred in its division of the marital share of the veterinary clinic. *See Cole, supra.*

1. Mr. Stephen Orr testified that he was a Certified Public Accountant, a Certified Valuation Analyst, and a Certified Forensic Financial Analyst.

2. Mr. Robert Hudgins testified that he was a Certified Public Accountant and also an attorney whose practice included business valuations.

■ We turn now to Beth's cross-appeal in which she contends that the trial court clearly erred by not dividing the marital equity in the certificate of deposit held in Michael's name. The undisputed evidence was that Michael borrowed $200,000, placed the funds in a CD that drew interest, and paid down the corresponding debt to the bank, owing approximately $151,333 at the time of the hearing. The trial court found that Michael would be entitled to the CD, a marital asset, and be responsible for the outstanding indebtedness, which was significantly less than the value of the CD. This resulted in a marital asset that was not divided equally, which is clearly erroneous absent an explanation of the reasons why that division was equitable. Ark.Code Ann. § 9–12–315(a)(1)(B) (Repl.2002). Although Michael offers reasons why this was equitable, the trial court did not recite any reasons in its decree. We agree that this requires reversal and remand.

■ |₈We also recognize that trial courts have broad powers in distributing marital property in order to effect a division that is fair and equitable under the specific circumstances present. *Copeland v. Copeland,* 84 Ark.App. 303, 139 S.W.3d 145 (2003); *Keathley v. Keathley,* 76 Ark. App. 150, 61 S.W.3d 219 (2001). Allocation of marital debt must be considered in the context of the distribution of all the parties' property. *Hackett v. Hackett,* 278 Ark. 82, 643 S.W.2d 560 (1982). We recognize, too, that alimony and property division are complementary devices that are employed to make the dissolution of a marriage as equitable as possible. *Cummings v. Cummings,* 104 Ark.App. 315, 292 S.W.3d 819 (2009); *Horton v. Horton,* 92 Ark.App. 22, 211 S.W.3d 35 (2005); *Cole, supra.* With that in mind, we reverse and remand on cross-appeal, and because we do so, the trial court is not precluded from reconsidering its award of alimony in order to effect a fair and equitable disposition of this matter.

Affirmed on direct appeal; reversed and remanded on cross-appeal.

VAUGHT, C.J., and HART, J., agree.