2013 Ark. App. 23

**Cynthia Butler FARRELL, Appellant**

v.

**Hanford Francis FARRELL, Appellee.**

**No. CA 12–275.**

Court of Appeals of Arkansas.

Jan. 23, 2013.

Rehearing Denied Feb. 27, 2013.

Meadors Law Firm, PLLC, by: Brian Meadors, Fort Smith, for appellant.

Ralph C. Williams, Bentonville, for appellee.

ROBERT GLADWIN, Chief Judge.

In this divorce case, Cindy Farrell appeals from the circuit court's disposition of the parties' marital property and the award of alimony to her. We reverse and remand for the circuit court to make additional findings.

Cindy and appellee, Hank Farrell, who were married more than thirty years, agreed that all their property was marital. Hank owns a 19.417% interest in a group of closely held family businesses referred to by the trial court and the parties as the Farrell–Cooper Companies, of which Hank is an officer. He also owns an interest in what they called the Texas entities or ventures. At trial, Hank asked the court to give Cindy one-half of their shares in the business interests, while Cindy asked the court to assign values to all the properties and to award money to her in lieu of an interest.[1]

In its letter opinion, the circuit court thoroughly explained the reasons for its distribution of property with a concomitant award of alimony to Cindy.

What other money or property is in existence excepting the "stuff" previously mentioned? The $233,638.00 from the sale of the house. A house at 924 So. Waldron with a net estimated value of $81,410.00 after payment of mortgage and closing costs. $729,817.45 in IRA's, 401k's. This totals $978,864.76. This doesn't consider the assets I have defined as "stuff."

The debt the parties owe, not including the debt on their holdings in the company or the mortgage on the Waldron house as this was included on the estimate of equity, is. $49,736.79 remaining debt on the lake house, $17,242.56 debt on the Cadillac, $8,206.53 of credit card debt, student loans $47,139.97.

The value of the company, the court uses this term inclusively, is a point of contention. There are several valuations. The statute uses the term "fair market value." There is no fair market value for these shares in the business are not for sale. It is a closely held family corporation. So the question is what is the value long-term to the owners or to someone who would buy the entire operation. Max Correll gave us book value and that is not the proper device. The Frazier–Frost valuation has deficiencies and the valuation of Mr.

---

**1.** The parties are in agreement with the division of the tangible personal property.

Jackson also has its limitations. These are too numerous for a lengthy discussion but the court has considered all these evaluations along with that of Mr. Stagg. Mr. Stagg states that the value of a coal mine is its reserves, that is the coal in the ground. Mr. Jackson and the Cooper's maintain correctly that the cost of getting the coal out of the ground, bonding and permitting should be considered. In general the court accepts the valuation of Mr. Stagg but assigns a discount for mining costs and contingencies of 25%. The Stagg valuation of the marital interest in the company is $13,209,469.00. 25% discount lowers it to $10,209,469.00. This added to the rest of the estate valued at $978,854.00 totals $11,188,323.00. Each party's interest in the marital estate is $5,594,162.00.

The court does not want to make Mrs. Farrell a minority share holder in the various businesses. This is due to a number of reasons. The foremost of which is that Mrs. Farrell or her representative will not allow the business to operate unimpeded. Someone will be looking over their shoulder every day. The other is the fear on the part of Mrs. Farrell that she will not be aware of the business and will not have the necessary trust. This is what will precipitate the interference. As a result the court is awarding all the shares in the family businesses to Mr. Farrell along with the debt associated with them. This is corporate debt and is not assigned to Mrs. Farrell. The personal debt of the parties is also assigned to Mr. Farrell but it is credited to him on the division of property in the amount of $72,588.96. This amount is considering the Waldron house sold. If she elects to take the Waldron house she would be responsible for the debt. This leaves $5,521,573.10. The court is awarding Mrs. Farrell the rest of the marital estate that has been valued at $978,864.76. Crediting this against her award of total assets leaves her award at $4,542,708.40. This is an extremely uneven division of assets in favor of Mr. Farrell. It remains for him to make arrangements to pay the additional monies to Mrs. Farrell so as to make the division equal. In such a situation alimony would probably not be a consideration as there would be sufficient assets to maintain a suitable lifestyle.

The court considers alimony in an effort to make for an equitable divorce. *Ellis v. Ellis*, 75 Ark.App. 173, [57 S.W.3d 220 (2001)]. The purpose of alimony is to rectify economic imbalances in earning power and standard of living and is fact dependent. The factors to be considered are the financial circumstances, income present and anticipated, resources and assets and the parties earning capacity. This is a 30 year marriage where the wife has not worked except in a vain attempt at being a professional bass fisherperson, and has decorated some of her friends' homes for no compensation. She also had a real estate license but sold no houses. Mr. Farrell has paid tax on earnings of $480,000 and $316,000 in 2008 and 2009. The court has also made a property division in the case that is overwhelmingly favorable to Mr. Farrell. for there to be an equitable divorce significant alimony is a factor. Alimony is income to the recipient and a deductible expense to the payor. After due consideration of all factors the court awards alimony to the Plaintiff in the amount of $10,000 per month for life. In additional consideration of the unequal division of property in favor of Mr. Farrell attorney fees and costs will be awarded to Mrs. Farrell upon presentation of a petition. The

*Chrisco* factors, considering the unequal property division, have been met.

The trial court entered the decree of divorce on November 9, 2011, without incorporating its letter opinion. It explained that it agreed with Cindy that the assets must be valued, otherwise, the case could be remanded for such a determination. The court noted that the marital property that remained to be divided fell into "three broad categories": the Farrell–Cooper Companies; the Texas ventures, and other marital assets. The court stated that it would treat the Farrell–Cooper Mining Company, Farrell–Cooper Land Company, and Laredo Solid Fuels as a single entity, Farrell–Cooper. In valuing Farrell–Cooper, the court rejected the expert testimony offered by Hank and expressly credited the valuation assigned by Cindy's expert, Alan Stagg, finding that the marital interest in Farrell–Cooper was worth $13.2 million. The court explained that it was applying a 25% discount to Hank's interest in Farrell–Cooper (by either crediting Hank's expert's testimony regarding costs and contingencies or applying a minority discount) and found that the value of the marital interest in Farrell–Cooper was $9.9 million (which was a recalculation of the amount set forth in the letter opinion). The court stated that it had considered the business-related debt in valuing the companies.

The court then discussed the other assets, which included the proceeds from the sale of the marital home, another house in Fort Smith, and the parties' IRA and 401K accounts, assigning a total value of approximately $1,045 million. The court assigned all the nonbusiness-related debts to Hank, for which it had given him credit. It then discussed the remaining assets:

> 38. The Court awards Hank all the interest in Farrell Cooper and the Texas entities. Cindy shall have no interests in any of these businesses, and shall sign whatever documents are necessary to release any legal interest she may have. The Court does not want to make Cindy a minority shareholder in the business interests for a number of reasons.
>
> 38.1. It is likely that Cindy or her representative would monitor the businesses to such an extent that it would impede their operations.
>
> 38.2. Given the history of the litigation and the testimony at trial, a high level of distrust on the part of Mrs. Farrell regarding business matters would be counter-productive.
>
> 38.3. Cindy could not fully realize the same value of the business interests as Hank, given that Cindy would not be an owner/employee like Hank, but would instead be a minority shareholder in businesses shared by Hank and his blood relatives and not able to have access to the amenities provided as discussed below.
>
> 39. The Court awards Cindy all the liquid assets of the estate, i.e., the house sale and the $730k in the other accounts. This is approximately $964k.
>
> ....
>
> 46. This is a thirty year marriage in which the wife has virtually no work history. She has not worked except in a vain attempt at being a professional bass fisher, a home decorator for friends (for no compensation), and a brief stint as a realtor in which she made two to three sales, at most.
>
> 47. Hank, on the other hand, has worked with the Farrell Cooper companies for his entire adult life and paid taxes on earnings of $480k and $316k in 2008 and 2009 respectively.
>
> 48. After due consideration of the alimony factors and the facts in this case, the Court finds that Cindy shall be entitled to an alimony award of $10,000 com-

mencing upon entry of this decree, and this award shall be for the life of Cindy.

Although the court awarded the Texas ventures to Hank, it did not assign a value to them. Cindy filed a motion for reconsideration in which she asked the court to place a value on the Texas ventures and to reconsider its award to her of less than half of the assets. The asserted that, even if the Texas ventures were valued at zero, the marital estate would be worth about $11 million, however, the court awarded her only 9.7% of the marital estate, leaving her with a shortfall of $4,366,400, to which, under any scenario, the alimony award was nowhere close. Cindy asked the court to divide the assets equally and to award her additional alimony to account for her lack of skills and the lengthy marriage. At a minimum, she asked for one-half of the value of the estate, which could be achieved either by changing the monthly alimony award to $33,000 or by eliminating alimony and ordering Hank to pay Cindy a $4.4 million lump sum. The court denied this motion. Cindy then brought this appeal.

Cindy does not challenge the circuit court's findings on the valuation of the property. Instead, she argues that (1) the trial court should have valued the Texas ventures, (2) the trial court erred in failing to give an explanation for the award to her of an unequal share of the marital property, and (3) even if the trial court had explained its reasoning, the distribution to her of less than one-third of the marital estate (including alimony) was inequitable.

On appeal, we review divorce cases de novo. *Dew v. Dew,* 2012 Ark. App. 122, 390 S.W.3d 764. We give due deference to the circuit court's superior position to determine the credibility of witnesses and the weight to be given their testimony. *Id.* With respect to the division of property in a divorce case, we review the circuit court's findings of fact and affirm unless those findings are clearly erroneous. *Dial v. Dial,* 74 Ark.App. 30, 44 S.W.3d 768 (2001). The obligations imposed upon a trial court by our property-division statute are quite exacting. Arkansas Lode Annotated section 9–12–315(a) (Repl.2009) provides that "[a]ll marital property shall be distributed one-half to each party unless the court finds such a division to be inequitable." The court may make some other division that it deems equitable, however, when it decides not to divide the property equally between the parties, it must recite its basis and reasons for the unequal division in its order. *Dew, supra;* Ark.Code Ann. § 9–12–315(a)(1)(B).

Arkansas Code Annotated section 9–12–315 provides in relevant part.

(a) At the time a divorce decree is entered.

(1)(A) All marital property shall be distributed one-half (1/2) to each party unless the court finds such a division to be inequitable. In that event the court shall make some other division that the court deems equitable taking into consideration.

(i) The length of the marriage,

(ii) Age, health, and station in life of the parties,

(iii) Occupation of the parties,

(iv) Amount and sources of income,

(v) Vocational skills,

(vi) Employability,

(vii) Estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income,

(viii) Contribution of each party in acquisition, preservation, or appreciation of marital property, including services as a homemaker, and

(ix) The federal income tax: consequences of the court's division of property.

(B) When property is divided pursuant to the foregoing considerations the court must state its basis and reasons for not dividing the marital property equally between the parties, and the basis and reasons should be recited in the order entered in the matter,

. . . .

(4) When stocks, bonds, or other securities issued by a corporation, association, or government entity make up part of the marital property, the court shall designate in its final order or judgment the specific property in securities to which each party is entitled, or after determining the fair market value of the securities, may order and adjudge that the securities be distributed to one (1) party on condition that one-half (1/2) the fair market value of the securities in money or other property be set aside and distributed to the other party in lieu of division and distribution of the securities.

■ The circuit court has broad powers to distribute property in order to achieve a distribution that is fair and equitable under the circumstances, it need not do so with mathematical precision. *Dew, supra,* The critical inquiry is how the total assets are divided. *Id.* We will not substitute our judgment on appeal as to the exact interest each party should have but will decide only whether the order is clearly wrong. *Wadley v. Wadley,* 2012 Ark. App. 208, 395 S.W.3d 411.

■ Cindy argues that the trial court erred in failing to expressly find the value of the Texas ventures, about which the parties strongly disagreed. The trial court explained that it relied on the testimony of Cindy's expert, Alan Stagg, who valued only Farrell–Cooper Mining and Farrell–Cooper Land Companies. Hank's CPA, Mike Johnson, testified that the value of the Texas entities was $1.6 million, after talking with John Langham, Cindy's CPA (who valued the Texas entities at $3.2 million), he revised his opinion and concluded that they had a negative value of $535,570.85. Johnson said that if Hank could sell the Texas entities for anything, he would do it in a heartbeat. Hank testified that, because of the economic crash in 2008, he was "upside-down" on the Texas properties, that he had received a capital call for $312,815.37; and that he would be happy to give them to Cindy.

Hank responds that the trial court simply lumped all of the Texas properties' values in with the Farrell–Cooper values and incorrectly attributed all of the supporting evidence to Alan Stagg, who actually appraised only Farrell–Cooper Mining Company and Farrell–Cooper Land Company. He states that "[t]he trial judge therefore added an additional net $865,469 evaluation in arriving at his total valuation, which, by process of elimination would have to be his valuation of the Texas entities." According to Hank, when the trial court stated in the letter opinion that it used the term "company" inclusively, it clearly indicated that it was including all of the Texas entities in that group. It is not, however, clear to us that the trial court meant to include the Texas entities in the value of Farrell–Cooper, because it recognized in the decree that they were in a separate category of property, and it expressly adopted the valuation of Cindy's expert, who did not value the Texas ventures. Section 9–12–315(a)(4) provides that, if the trial court awards "money or other property . . . in lieu of division of stocks, bonds, or other securities," it must determine the securities' fair market value. Although the value of the Farrell–

Cooper Companies found by the trial court was well within the range provided by expert testimony, the statute requires the court to expressly find the value of this type of property. It will, therefore, be necessary to remand this question to the trial court for such a finding.

■ Cindy next argues that the trial court did not give an explanation for the unequal division, as required by the statute. Hank responds that the trial court explained its unequal division in its letter opinion. Section 9–12–315(a)(i)(B) provides that, if the trial court makes an unequal division, "the basis and reasons should be recited in the order entered in the matter." *See Waggoner v. Waggoner,* 2012 Ark. App. 286, 423 S.W.3d 117, S.W.3d.[2] We recognize that the circuit court did thoroughly explain its division in the letter opinion, it expressly stated that this was "an extremely uneven division of assets in favor of Mr. Farrell," explained why it chose to award all of the interest in the family businesses to Hank, and indicated that alimony would make up the imbalance. However, it did not incorporate its letter opinion in the decree. A letter opinion that has not been incorporated into the judgment is not the equivalent of a written order. *Thomas v. McElroy,* 243 Ark. 465, 420 S.W.2d 530 (1967); *Wilkinson v. Smith,* 2012 Ark. App. 604, 2012 WL 5358347. The decisions, opinions, and findings of a court—including those expressed in a letter opinion—do not constitute a judgment or decree, but are merely the bases upon which the judgment or decree is subsequently to be rendered and are not conclusive unless incorporated in the judgment. *Id., Myers v. McCall,* 2012 Ark. App. 669, 2012 WL 5949349. We

therefore must remand this issue for the trial court to satisfy the statute.

■ We do not reach Cindy's challenge to the award of alimony. Alimony and property divisions are complementary devices that a trial court employs to make the dissolution of a marriage as equitable as possible. *Stuart v. Stuart,* 2012 Ark. App. 458, 422 S.W.3d 147; *Davis v. Davis,* 79 Ark.App. 178, 84 S.W.3d 447 (2002). On de novo review of a fully developed record, where we can plainly see where the equities lie, we may enter the order that the trial court should have, or we may reverse and remand for further proceedings. *Copeland v. Copeland,* 84 Ark.App. 303, 139 S.W.3d 145 (2003). On remand to find the value of the Texas ventures and to explain its reasons for making the unequal division in the order, the trial court may reconsider the award of alimony. *See Wadley, supra; Watkins v. Watkins,* 2012 Ark. App. 27, 388 S.W.3d 53, *Copeland, supra,*

Reversed and remanded.

PITTMAN and WALMSLEY, JJ., agree.

**2.** We stated in *Cole v. Cole,* 82 Ark.App. 47, 57, 110 S.W.3d 310, 316 (2003), "[W]hile there is no requirement that each party receive a share of each item of marital property, section 9–12–315 requires an explanation for such unequal division." In *Wadley, supra,* we reversed and remanded for the trial court to explain its failure to equally divide a CD.