

Cite as 2014 Ark. App. 601

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-13-990

| | |
|---|---|
| | **Opinion Delivered** November 5, 2014 |
| CYNTHIA BUTLER FARRELL<br>APPELLANT | APPEAL FROM THE SEBASTIAN<br>COUNTY CIRCUIT COURT,<br>FORT SMITH DISTRICT<br>[NO. DR 09-580] |
| V. | |
| | HONORABLE JIM D. SPEARS,<br>JUDGE |
| HANFORD FRANCIS FARRELL<br>APPELLEE | REVERSED AND REMANDED |

## ROBERT J. GLADWIN, Chief Judge

This divorce case returns after we reversed and remanded the previous appeal so that the Sebastian County Circuit Court could value some of the marital assets and explain its reasoning for an unequal distribution of those marital assets in its divorce decree. *Farrell v. Farrell*, 2013 Ark. App. 23, 425 S.W.3d 824 (*Farrell I*). Cindy Farrell again appeals and argues that the circuit court should have provided a more equal distribution of the marital assets and that the court erred in its award of alimony to her. We reverse and remand.

This was a marriage lasting more than thirty years. The parties agreed that a substantial amount of their property was marital property. Hank owns a minority interest in a conglomerate of closely-held family businesses referred to by the circuit court and the parties as the Farrell–Cooper Companies. He also owns an interest in what the parties called the Texas entities or ventures. The circuit court valued the marital interest in the Farrell–Cooper

Companies at $9.9 million after applying a discount, with the entire interest being awarded to Hank. Cindy was awarded the remaining marital property, which included the proceeds from the sale of the marital home, another house in Fort Smith, and the parties' IRA and 401(k) accounts, values assigned by the circuit court of approximately $1.045 million. The court awarded Cindy lifetime alimony of $10,000 per month to help equalize the property division.          In *Farrell I*, we said that it was not clear whether the circuit court had included in its valuation of the Farrell-Cooper Companies the valuation of the Texas ventures. We then remanded the case to the circuit court to make a valuation of Hank's interest in the Texas ventures. We also directed the circuit court to comply with the requirements of Arkansas Code Annotated section 9-12-315 so that the court provide an explanation for such unequal division in its divorce decree. We did not reach Cindy's arguments concerning the award of alimony; instead, we allowed the circuit court to reconsider the award of alimony in light of the value it placed on the Texas ventures.

On remand, the circuit court asked for briefs on the remaining issues. Cindy argued that the Texas entities should be valued at least $3.2 million, if not higher, and included in the marital estate. She also sought at least half of the marital estate, arguing that the statutory factors supported an unequal division of the marital property in her favor. She also argued that Hank should immediately pay her for her interest in the marital estate.

Hank argued that the Texas entities had already been included in the marital estate. He noted that his expert placed a negative valuation of approximately $535,000 on the Texas

entities. He also asserted that Cindy's alimony award was sufficient to satisfy her share of the marital estate.

In a June 3, 2013 letter opinion, the court began by incorporating its original August 31, 2011 letter opinion into its new decision as well as the original divorce decree to the extent it did not conflict with the June 3, 2013 letter opinion. The court valued the Texas entities at $1.6 million, with each party's share at $800,000. The court then applied a thirty-five-percent minority discount to Cindy's share, with her share calculated at $670,148.58. This, according to the circuit court, brought Cindy's share of the marital estate to approximately $5.2 million. The Texas entities themselves were assigned, in their entirety, to Hank. The court also increased Cindy's alimony from $10,000 to $13,000 per month to compensate for the unequal distribution of the marital estate. The circuit court required Hank to provide a $3 million life-insurance policy with Cindy as the beneficiary to insure the alimony obligation.

Although the circuit court had not yet entered its decree on remand, Hank filed his motion seeking reconsideration, requesting that he be relieved of the requirement to provide life insurance for Cindy's benefit. Cindy argued that the insurance obligation should continue because she was already receiving, according to her, less than one-third of the marital estate.

The court granted Hank's motion and removed the requirement that he provide life insurance for Cindy's benefit, holding that Cindy had sufficient funds to insure Hank's alimony obligation.

3

Cindy filed a motion seeking reconsideration on June 26, 2013, renewing her argument that the "alimony" did not compensate her for the value of the marital estate. She requested that she be awarded a lump-sum payment for her share of the estate or that the alimony award be adjusted to reflect the value of fifty percent of the marital estate.

The circuit court's amended decree was entered on July 2, 2013. As noted in the June 3, 2013 letter opinion, both the 2011 and 2013 letter opinions were incorporated by reference into the amended decree. The amended decree also contained a provision disposing of Hank's motion to be relieved of the obligation to insure the award and of Cindy's first motion for reconsideration.

Cindy filed a second motion for reconsideration on July 15, 2013. In her motion, Cindy maintained her objections to the award of alimony as insufficient and inequitable to compensate her for her share of the marital estate. In addition to a fifty-percent share of the marital estate, she argued that she should be entitled to a separate award of traditional alimony based on her need and Hank's ability to pay.

The circuit court issued a letter opinion denying the second motion for reconsideration on July 18, 2013. An order memorializing the ruling was entered on July 22, 2013. Cindy now appeals.

In *Farrell I*, we set forth our standard of review as follows:

> On appeal, we review divorce cases de novo. We give due deference to the circuit court's superior position to determine the credibility of witnesses and the weight to be given their testimony. With respect to the division of property in a divorce case, we review the circuit court's findings of fact and affirm unless those findings are clearly erroneous. The obligations imposed upon a trial court by our property-division statute are quite exacting. Arkansas Code Annotated section

SLIP OPINION

9-12-315(a) (Repl. 2009) provides that "[a]ll marital property shall be distributed one-half to each party unless the court finds such a division to be inequitable." The court may make some other division that it deems equitable; however, when it decides not to divide the property equally between the parties, it must recite its basis and reasons for the unequal division in its order.

*Farrell I*, at 6, 425 S.W.3d at 829 (alteration in original) (citations omitted). We continued, noting that

> The circuit court has broad powers to distribute property in order to achieve a distribution that is fair and equitable under the circumstances; it need not do so with mathematical precision. The critical inquiry is how the total assets are divided. We will not substitute our judgment on appeal as to the exact interest each party should have but will decide only whether the order is clearly wrong.

*Farrell I*, 2013 Ark. App. 23, at 7, 425 S.W.3d at 830 (citations omitted).

Although Cindy argues three points for reversal, we conclude that we must again reverse because the circuit court did not comply with the requirements of Arkansas Code Annotated section 9-12-315 (Repl. 2009).

We begin by expressing some uncertainty as to whether the circuit court's order requiring Hank to pay Cindy $13,000 per month was payment for her share of marital property or, instead, payment of alimony to equalize an unequal distribution of the marital estate. We have indicated that the characterization of installment payments made pursuant to an award in a divorce decree depends on the circumstances surrounding the award. *Snyder v. Snyder*, 13 Ark. App. 311, 313, 683 S.W.2d 630, 631 (1985) (citing *Stout v. Stout*, 4 Ark. App. 266, 630 S.W.2d 53 (1982)).

In its 2011 letter opinion, the circuit court had stated that each party was to receive an equal share of the marital property. After assigning all of the marital interest in

5

Farrell–Cooper to Hank, the court noted that "[t]his is an extremely uneven division of assets in favor of Mr. Farrell. It remains for him to make arrangements to pay the additional monies to Mrs. Farrell so as to make the division equal." This appears to indicate that the payments are for Cindy's one-half of the marital estate. This appearance was seemingly confirmed in the court's 2013 letter opinion describing Cindy as receiving a one-half share of Hank's interest in the Texas entities. Another indication that the circuit court may have considered the payments, although called "alimony," to be installment payments for Cindy's share is that the court did not provide that the payments would cease upon the death of either party or in the event Cindy remarried or cohabitated. On the other hand, the court also discussed the factors normally to be considered in setting "traditional" or need-based alimony. Because of this uncertainty, the circuit court should clarify what it intended in its division of marital property and award of alimony. There are other areas that require an explanation.

In its 2013 amended decree, the court valued Cindy's total interest in the marital estate at $5,212,856.98. The court had awarded her $1.045 million in liquid assets as part of the original decree. However, neither the 2011 decree or the amended 2013 decree actually awarded Cindy $4.167 million for her remaining share of the estate. This left Hank with approximately 90% of the marital estate and Cindy with approximately 10%. Such an unequal division requires an explanation. Ark. Code Ann. § 9-12-315(a)(1)(B).

If the circuit court intended to give each party an equal share of the marital estate, the problem is that the circuit court assigned all of the income-producing assets to Hank, allowing him to immediately enjoy the full value of those assets. Meanwhile, Cindy is forced

6

to rely on a series of periodic payments, requiring her to wait years if not decades before she receives the full value of her share of the marital property. This appears to be contrary to the intent of our marital-property statute that all property be divided and distributed at the time the divorce decree is entered. *See* Ark. Code Ann. § 9-12-315(a) ("At the time a divorce decree is entered: . . ."). By allowing Hank to pay Cindy for her share over an extended period of time, they will necessarily be forced to maintain a continuing connection. The precise period is left to the discretion of the circuit court. In general, the duration should be the shortest term that the payor can afford without undue financial hardship. Recently, in *Russell v. Russell*, 2013 Ark. 372, 430 S.W.3d 15, originally decided by the same circuit court as the present case, our supreme court approved a *short-term* award of alimony for twenty-four months as a method of allocating to one party an interest in the other party's property to balance some inequity in the division of marital property.

If the circuit court intended for each party to receive an equal share of the marital property, albeit paid in installments, there are other problems with its approach. The most important is that the court failed to consider the time value of money. At $13,000 per month, it would take over twenty-six years to pay Cindy $4.167 million for her marital interest. It is axiomatic that the present value of a series of payments in the future is lower than the sum of the payments that will eventually be received, because the payee does not yet have the use of the unpaid money. The longer the payment period, the greater the discrepancy between the present value of the monetary award and the sum of the stream of payments. *See generally Harper v. Harper*, 586 So. 2d 1147 (Fla. Dist. Ct. App. 1991). To

7

account for the time value of money, one of two approaches can be used. One is to provide for a reasonable rate of interest on the unpaid distributive award. The other approach is to work backward from a payment schedule considered desirable by the parties, and consider the present value of the proposed future payments when structuring the overall distribution. To avoid unfairness to the recipient, it is necessary to use one approach or the other. *Sateren v. Sateren*, 488 N.W.2d 631 (N.D. 1992). If periodic cash payments are awarded without interest but not discounted to present value, the distribution plan may be based upon an erroneously high concept of the monetary award's value. Therefore, when interest is not imposed, it is necessary to discount the installment payments to present value to arrive at an equitable property division. *Id*. However, it does not appear that the circuit court did either.

In addition to potentially deferring a multimillion-dollar award over an undetermined period of years, the circuit court also awarded Cindy no security on the award. At the time of trial in 2011, Cindy was 55 years old. According to the actuarial tables found at Ark. Code Ann. § 18-2-105, Cindy had an average remaining life expectancy of approximately twenty-six years. It would take over twenty-six years for Hank to pay Cindy over $4 million at the rate of $13,000 per month. Thus, it is unclear whether she or Hank would live long enough for Cindy to receive all of her share of the marital property. If the circuit court was attempting to have Hank pay Cindy for her share of the marital property, it should have stood by its order to have Hank to provide some form of security such as a life insurance policy, with Cindy as the beneficiary or a bond. *See Rudder v. Hurst*, 2009 Ark. App. 577, 337 S.W.3d 565.

8

Finally, the circuit court should have considered the federal income-tax consequences of the court's division of property, as required by Arkansas Code Annotated section 9-12-315(a)(1)(A)(ix). By calling the monetary payments to Cindy "alimony," the court potentially saddled her with additional tax liabilities because, for federal taxation purposes, alimony is income to the recipient and constitutes a deduction to the payor. *See* 26 U.S.C. § 215(a)–(b) (2012). Equitable distribution is merely a division of the marital property of each spouse and does not constitute "income" to either party.

We therefore reverse the circuit court's decree and remand so that the circuit court can comply with the requirements of section 9-12-315 by explaining whether the "alimony" awarded was traditional alimony or, instead, an equitable reimbursement designed to allow Hank to make installment payments to Cindy to satisfy his equitable-distribution debt to Cindy. If the court intends for the payments to be for Cindy's share of the marital property, it should also explain why Hank should not be required to borrow the funds to pay her. The court can also reconsider whether Cindy should receive "traditional," need-based alimony.

Reversed and remanded.

PITTMAN and WYNNE, JJ., agree.

*Clark Law Firm PLLC*, by: *Suzanne G. Clark*, for appellant.

*Ralph C. Williams*, for appellee.