SLIP OPINION

Cite as 2017 Ark. App. 7

# ARKANSAS COURT OF APPEALS
DIVISION I
**No.** CV–16–436

| | |
|---|---|
| CYNTHIA BUTLER FARRELL<br><div align="right">APPELLANT</div><br><br>V.<br><br><br>HANFORD FRANCIS FARRELL<br><div align="right">APPELLEE</div> | **OPINION DELIVERED:** JANUARY 18, 2017<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT [NO. 66DR2009-580]<br><br>HONORABLE JIM D. SPEARS, JUDGE<br><br>AFFIRMED IN PART; REVERSED IN PART; AND REMANDED |

## ROBERT J. GLADWIN, Judge

Cynthia "Cindy" Farrell and Hansford "Hank" Farrell were divorced by decree entered in November 2011. Cindy appeals for the third time[1] and argues that the Sebastian County Circuit Court should have provided a more equal distribution of the marital assets and that the court erred in denying her requests for alimony and attorney's fees. We agree that the circuit court's division of the marital property was not equitable to either party. Accordingly, we reverse in part, affirm in part, and remand.

This was a marriage lasting more than thirty years. The parties agreed that all of their substantial amount of property was marital property. The major asset and the crux of this dispute is Hank's minority interest in a conglomerate of closely held family businesses

---

[1] *Farrell v. Farrell*, 2014 Ark. App. 601 (*Farrell II*); *Farrell v. Farrell*, 2013 Ark. App. 23, 425 S.W.3d 824 (*Farrell I*).

referred to by the circuit court and the parties as the Farrell-Cooper Companies. He also owns an interest in what the parties called the Texas entities or ventures. The circuit court valued the marital interest in the Farrell-Cooper Companies at $9.9 million after applying a discount, with the entire interest being awarded to Hank. Cindy was awarded the remaining marital property, which included the proceeds from the sale of the marital home, another house in Fort Smith, and the parties' IRA and 401K accounts, with a total value of approximately $1.045 million. Cindy was also awarded lifetime alimony to compensate for the unequal property division. Cindy's appeal of the decree led to our opinion in *Farrell I*.

Following remand from *Farrell I*, the circuit court valued the Texas entities at $1.6 million, with each party's share valued at $800,000. The court then applied a thirty-five percent minority discount to Cindy's share, with her share calculated at $670,148.58. This brought Cindy's share of the marital estate to approximately $5.2 million. The Texas entities were assigned, in their entirety, to Hank. The court increased Cindy's alimony to $13,000 per month. Cindy also appealed this decision.

In *Farrell II*, we noted lack of clarity in the circuit court's ruling. There was uncertainty as to whether the periodic payments labeled "alimony" were traditional alimony or payments for Cindy's share of the marital property. We noted that the court appeared to make an unequal distribution of the marital estate without stating the basis for such a division, as required by Arkansas Code Annotated section 9-12-315(a)(1)(B) (Repl. 2015). We also stated that the fact Hank was awarded all of the parties' income-producing property while Cindy had to wait many years before she received her full share of the marital estate was a concern. The circuit court was directed to consider whether Hank should be required

to obtain a loan to pay Cindy for her share of the marital property. We further suggested that the court consider some type of security for the payments. Finally, we granted the circuit court permission to reconsider whether Cindy should receive "traditional," need–based alimony and any possible tax consequences.

Following the remand from *Farrell II*, the circuit court confirmed that the monthly payments to Cindy were intended to compensate her for her share of the marital estate. The court conducted a hearing on November 12, 2015, to determine whether Hank should be required to obtain a loan to pay Cindy and what security could be provided to Cindy for the payment of the money owed her. During the hearing, the parties presented evidence addressing whether Hank would be able to obtain a loan with which to pay Cindy for her share of the marital estate. Cindy also proposed that Hank sign a note to her in the amount of approximately $4.2 million on very favorable terms.

At the conclusion of the hearing, the circuit court asked both parties to submit proposed findings of fact and conclusions of law. The court later adopted the findings of fact and conclusions of law submitted by Hank. The court concluded that Hank was unable to obtain a loan from a commercial bank and rejected Cindy's proposal that Hank sign a promissory note in her favor secured by his interest in the family businesses. The court found that such an arrangement would be unfair to Hank. The court also denied Cindy's request for need–based alimony and denied her petition for attorney's fees. A decree incorporating the findings and conclusions was entered on February 4, 2016. This appeal followed.

In the earlier appeals, we set forth our standard of review as follows:

> On appeal, we review divorce cases de novo. We give due deference to the circuit court's superior position to determine the credibility of witnesses and the

weight to be given their testimony. With respect to the division of property in a divorce case, we review the circuit court's findings of fact and affirm unless those findings are clearly erroneous. The obligations imposed upon a trial court by our property-division statute are quite exacting. Arkansas Code Annotated section 9-12-315(a) (Repl. 2009) provides that "[a]ll marital property shall be distributed one-half to each party unless the court finds such a division to be inequitable." The court may make some other division that it deems equitable; however, when it decides not to divide the property equally between the parties, it must recite its basis and reasons for the unequal division in its order.

*Farrell I*, 2013 Ark. App. 23, at 6, 425 S.W.3d at 829 (alteration in original) (citations omitted). We have noted that

[t]he circuit court has broad powers to distribute property in order to achieve a distribution that is fair and equitable under the circumstances; it need not do so with mathematical precision. The critical inquiry is how the total assets are divided. We will not substitute our judgment on appeal as to the exact interest each party should have but will decide only whether the order is clearly wrong.

*Id.* at 7, 425 S.W.3d at 830 (citations omitted).

We find merit in Cindy's first argument that the circuit court erred in its distribution of the parties' marital property. Cindy argues that she is entitled to receive approximately $4.2 million as her share of the marital estate.

In each of its orders leading to *Farrell I* and *Farrell II*, the circuit court found that each party's share of the marital estate was worth approximately $5.2 million. It did not modify that finding in subsequent orders; the only mention of an unequal distribution was of the stock in the Farrell-Cooper Companies being awarded to Hank with Cindy receiving most of the parties' liquid assets. Therefore, we surmise that the circuit court intended for each party to receive an equal share of approximately $5.2 million. Under the decree as amended, Cindy was awarded $1.045 million in liquid assets. Hank was permitted to pay to Cindy her outstanding share of the property division as "alimony" of $13,000 per month for the remainder of Cindy's life. The circuit court later clarified on remand from *Farrell II* that the

4

payments were indeed intended as reimbursement for Cindy's share of the marital property. However, the court made no provision for what would happen to the payments in the event of the death of either party. The court also did not address interest on the payments.

The circuit court's approach is not equitable to either party. As we pointed out in *Farrell II*, it would take over twenty-six years to pay Cindy the remaining $4.16 million due for her share of the marital property. *Farrell II*, *supra*, at 7. It is unfair to Hank to make him continue until he is in his eighties to pay Cindy for her share of the marital property. It is likewise unfair to make Cindy wait until she is also in her eighties to have the full enjoyment of her share of the marital property while Hank is able to fully use his share now. By requiring that all property be divided and distributed at the time the divorce decree is entered, Arkansas Code Annotated section 9-12-315(a) seeks to disentangle the parties' financial affairs and make them free from each other's interference. The rationale for such a statute was well explained by the New Hampshire Supreme Court as follows:

> Any court order that postpones distribution, thereby financially linking the parties to one another following a judgment of dissolution, invites future strife when one of the parties seeks to enforce the order. In addition, the spouse awaiting distribution could find [himself] or herself deprived of, or forced into further litigation concerning, the ordered share of marital property by intervening events such as the obligor's bankruptcy, fraudulent transfer of assets, or untimely death. As such, a trial court should award a property settlement to be effected immediately where practicable.

*In the Matter of Harvey & Harvey*, 899 A.2d 258, 268 (N.H. 2006), *overruled on other grounds In the Matter of Chamberlin & Chamberlin*, 918 A.2d 1 (N.H. 2007).

Here, the parties' major asset is Hank's stock in the Farrell-Cooper Companies and the Texas entities. Arkansas Code Annotated section 9–12–315(a)(4) governs this issue and provides as follows:

(4) When stocks, bonds, or other securities issued by a corporation, association, or government entity make up part of the marital property, the court shall designate in its final order or judgment the specific property in securities to which each party is entitled, or after determining the fair market value of the securities, may order and adjudge that the securities be distributed to one party on condition that one-half (1/2) the fair market value of the securities in money or other property be set aside and distributed to the other party in lieu of division and distribution of the securities.

In *Hodges v. Hodges*, 27 Ark. App. 250, 770 S.W.2d 164 (1989), we applied the statute and pointed out that a circuit court has two options when dividing corporate stock in a divorce: (1) designate the specific property in stock to which each party is entitled or (2) order that the stock be distributed to one party and the other party receive one-half of the fair market value of the stock in money or other property. We specifically held that the statute did not authorize a stock sale and division of the proceeds.

We recognize that the Farrell-Cooper Companies and the Texas entities are closely held family corporations and, as such, have limited marketability. We further recognize that the circuit court did not want to make Cindy a shareholder because her lack of knowledge of the business and her lack of trust toward Hank's family members running the business would make her, in the words of her attorney, an "officious intermeddler." We also have before us the circuit court's finding that Hank lacks the ability to borrow sufficient funds with which to pay Cindy for her interest in the marital property.[2] However, these findings cannot in any way justify the circuit court's departure from its obligation to make an

---

[2]We note that the circuit court's findings on remand from *Farrell II* attempted to rely on the fact that coal prices (one of the businesses of the Farrell-Cooper Companies) had fallen since the trial in 2011 to justify an unequal division of the marital property. However, such hindsight cannot use subsequent events to alter the value of the marital property that existed as of the date of the divorce. *See Skokos v. Skokos*, 344 Ark. 420, 40 S.W.3d 768 (2001).

equitable division of the parties' marital property. Nor do the same findings justify ignoring section 9-12-315(a)'s command that the marital property be distributed *at the time of the divorce. See Russell v. Russell*, 275 Ark. 193, 628 S.W.2d 315 (1982). Accordingly, we hold that the circuit court erred by allowing Hank to pay a substantial portion of Cindy's share of the marital property over a multi year period. Upon remand, the circuit court should, pursuant to section 9-12-315(a)(4), order an immediate equal division of the stock. Hank is to be given credit against Cindy's share of the marital property for the monthly "alimony" payments he has made since entry of the original decree.

This brings us to Cindy's second argument that the circuit court abused its discretion in failing to award her traditional, need-based alimony. In denying Cindy's request for traditional alimony, the circuit court found that there was "insufficient evidence presented [at the trial] in 2011 to support traditional 'need-based' alimony: $1.0-plus million in investable cash, plus the equitable reimbursement alimony, would reasonably address any need(s) that had been presented by [Cindy]."

The decision to grant alimony lies within the sound discretion of the circuit court and will not be reversed on appeal absent an abuse of discretion. *Stuart v. Stuart*, 2012 Ark. App. 458, 422 S.W.3d 147. A circuit court abuses its discretion when it exercises its discretion improvidently, or thoughtlessly and without due consideration. *Id*. The purpose of alimony is to rectify the economic imbalance in earning power and standard of living of the parties to a divorce in light of the particular facts of each case. *Davis v. Davis*, 79 Ark. App. 178, 84 S.W.3d 447 (2002). In fixing the amount of alimony to be awarded, the circuit court is given great discretion, and the appellate courts will not disturb the award on appeal

unless there is an abuse of that discretion. *Id.* The primary factors to be considered in making or changing an award of alimony are the need of one spouse and the ability of the other spouse to pay. *Id.* Secondary factors to be considered by the trial court include (1) the financial circumstances of both parties; (2) the amount and nature of the income, both current and anticipated, of both parties; (3) the extent and nature of the resources and assets of both parties; and (4) the earning ability and capacity of both parties. *Id.* The amount of alimony awarded should not be reduced to a "mathematical formula" because the need for flexibility outweighs the need for relative certainty. *Id.*

Cindy argues that the circuit court failed to consider the proper factors in denying her request. There was no additional evidence presented on remand from either appeal dealing with factors bearing on alimony. The court's original 2011 letter opinion stated that the court considered all of the factors relevant to alimony. The parties were married for over thirty years. Cindy was 55 years old at the time of trial in 2011, making her now 60. Cindy was not employed outside of the home during that entire time, and she has no likelihood of earning much in the future. She has a number of health problems, and the circuit court did not direct Hank to continue providing health insurance for her. These factors would support an award of need-based alimony. Hank also clearly has the ability to pay, as shown by the testimony at trial. On the other hand, Cindy was awarded $1 million in cash. We have now held that she is entitled to approximately $4.16 million in stock in the closely-held corporations. As the circuit court said in its original 2011 letter opinion, that is a sufficient estate so that Cindy would not have a "need" for traditional alimony.

We cannot say that the circuit court's decision denying Cindy alimony was made thoughtlessly and without due consideration. Thus, it was not an abuse of discretion.

Finally, Cindy argues that the circuit court abused its discretion in failing to award her attorney's fees for the work done on appeal in *Farrell II*. Cindy sought approximately $18,000 in attorney's fees. Hank argues that the circuit court lacked jurisdiction to award fees because the remand from *Farrell II* was a limited one, and we did not designate attorney's fees as one of the issues for the circuit court to clarify. The circuit court ruled, without explanation, that each party was to bear his or her own fees and costs.

Hank is correct. We did not discuss fees as an issue for the remand from *Farrell II*. We have held that a trial court was without authority to award attorney's fees following an appeal where the additional fees on appeal were not awarded by the direction of the appellate court, were not of a ministerial nature in following the appellate mandate, and were for services of the prevailing party's attorney on appeal. *Nat'l Cashflow Sys., Inc. v. Race*, 307 Ark. 131, 817 S.W.2d 876 (1991).

Affirmed in part; reversed in part; and remanded.

HARRISON and VAUGHT, JJ., agree.

*Davis, Clark, Butt, Carithers & Taylor, PLC*, by: *Constance G. Clark* and *William Jackson Butt II*, for appellant.

*Ralph C. Williams* and *Nancy A. Martin*; and *Smith, Cohen & Horan, PLC*, by: *Matthew T. Horan*, for appellee.