2010 Ark. App. 718

**Larie B. CRAIG, Appellant**

v.

**Sharon M. CRAIG, Appellee.**

**No. CA 10–344.**

Court of Appeals of Arkansas.

Oct. 27, 2010.

John Greenhaw, Greenhaw & Greenhaw, Fayetteville, for appellant.

John D. Bass, Howerton Law Firm, P.A., Fayetteville, for appellee.

KAREN R. BAKER, Judge.

Appellant Larie Craig appeals from the divorce decree ending his marriage to appellee Sharon Craig. On appeal, he asserts that the trial court erred when it combined his income with that of his roommate/girlfriend in calculating his income and in awarding alimony. We find merit in his argument and reverse the decision of the trial court.

The parties were married on August 2, 1969, and appellant filed a complaint for divorce in the Washington County Circuit Court on June 16, 2009. Appellee filed an answer and counterclaim for divorce and other relief. The two children of the parties had reached the age of majority at the time of this proceeding. After a hearing on December 15, 2009, the court granted appellant an absolute divorce on the ground that the parties had lived continuously separate and apart for a period of time exceeding eighteen consecutive months prior to the filing of the action.

Appellant and appellee lived together as husband and wife in Troy and Warren, Michigan, from 1969 until June of 2007, at which time they separated. Appellee worked for a subsidiary of General Motors for thirteen years until she was laid off. Appellant was also employed by General Motors for seventeen years until he was laid off.

Appellant testified that he moved to Arkansas in 2007 to find employment, and at the time of the hearing, he was employed by the Fayetteville School District and was sixty-one years old. His affidavit of financial means reflected (1) that his take-home pay was $1,367.84 per month,[1] (2) that his total monthly expenses were $1,959, (3) that he had $250 in the bank, and (4) that appellee had knowledge of his debts. Appellant testified that in 2006, he withdrew $91,000 from his General Motors pension plan for living expenses and had spent all of it by the time of trial.

Appellant testified that he currently lived with his girlfriend, Cheryl Edgington. He stated that they earn the same salary and directly deposit both of their pay-

1. The in-depth section of the affidavit of financial means reflected a take-home pay of $1,682.62 before $131 was deducted for pension benefits and stock purchase plans; however, in a summary section of the same document, the take-home pay is listed as $1,367.84. The hearing testimony did not explain the difference, and the oral ruling and divorce decree stated appellant's take-home pay was $1,367.84 per month.

checks into one bank account out of which all of their expenses are paid. Appellant stated that he waived the right to any personal possessions accumulated during the marriage and to any claim in the marital home. He testified that he was willing to immediately sign a quitclaim deed to convey the property to appellee. He also stated that he was not making any claim to the money that appellee had collected on her retirement and pension plans.

Ms. Edgington testified that she and appellant had lived together for the past one and a half years. She stated that she earns the same salary as appellant, that both of their checks are deposited into the same checking account, and that all of their expenses are paid out of it. She testified that appellant had not given her any gifts, but that he had paid for her expenses when they went to Florida to visit his family.

Appellee testified that she had no major health problems and no claim for disability pending; yet, she had not applied for work since 2005. She stated that she did not have a job because Detroit does not have any jobs. Appellee filed for divorce against appellant in Michigan in 2004, but the case was dismissed. She stated that it was her understanding that appellant came to Arkansas to find work, and that once he found employment, she was to follow; however, he never sent for her.

Appellee testified that in 2006, she withdrew $126,000 from her pension fund and rolled it into an IRA account that had $5,000 in it at the time of the hearing. She testified that she had $9,000 in the bank, and that she, at one time, had three additional IRAs from her General Motors pension. Finally, she said that the marital-home monthly mortgage payments of $1,367.47 were six months in arrears. Appellee's affidavit of financial means re-flected that (1) her monthly expenses were $2,939, (2) she had debt in the amount of $14,929 that was not included in those monthly expenses, and (3) she needed unspecified repairs to her vehicle, which had been damaged in an accident and rendered inoperable.

The trial court found that the parties had marital indebtedness to a tax attorney in the amount of $2,060 and determined that each party had responsibility for one-half of that debt. To avoid foreclosure, the trial court ordered each party to be responsible for one-half of the past-due six months of mortgage payments on the marital home. The divorce decree stated that there was not much benefit to appellant's willingness to relinquish his interest in the home, but it did not address whether appellant should execute a quitclaim deed to relinquish his interest.

The trial court found that appellee was a dependant spouse and that she was entitled to an award of alimony in the amount of $700 per month to be paid until appellee remarries, dies before appellant, or for the next five years, whichever is shortest. The order stated:

In making its award of alimony, the court has considered the parties' respective Affidavits of Financial Means and the testimony of the parties and Ms. Cheryl Edgington. With respect to Mr. Craig's Affidavit of Financial Means, it was established through the testimony of the parties and of Ms. Edgington, that the expenses Mr. Craig has represented on his Affidavit of Financial Means are essentially the expenses for two, himself and Mrs. Edgington with whom he lives. There has also been testimony from the plaintiff and Ms. Edgington that she and Mr. Craig mix their funds and earnings by depositing them in a joint account. Specifically, Mr. Craig and Ms. Edgington have a

direct deposit of the same amount of income into their joint account. Both the plaintiff and Ms. Edgington have testified that the amounts of their incomes are the same. Based on this, the Court finds that Mr. Craig's salary of $1,367.84 per month is not the only source of income that he has to pay against his debts listed in his Affidavit of Financial Means.

The award of alimony is not mandatory, but is instead discretionary, and the trial court's decision regarding any such award will not be reversed absent an abuse of discretion. *Jackson v. Jackson,* 2009 Ark. App. 238, 303 S.W.3d 460. The purpose of alimony is to rectify, insofar as is reasonably possible, the frequent economic imbalance in the earning power and standard of living of the divorced parties in light of the particular facts of each case. *Holaway v. Holaway,* 70 Ark.App. 240, 16 S.W.3d 302 (2000). The primary factors to be considered in awarding alimony are the need of one spouse and the other spouse's ability to pay; secondary factors that may also be considered in setting alimony include (1) the financial circumstances of both parties, (2) the amount and nature of the income, (3) the extent and nature of the resources and assets of each of the parties, and (4) the condition of health and medical needs of the parties. *Id.; see also Ellis v. Ellis,* 75 Ark.App. 173, 57 S.W.3d 220 (2001).

Appellant seeks reversal claiming that the trial court erred when it combined his income with his roommate/girlfriend's income in calculating his income and in calculating the award of alimony. Embedded within this point, appellant asserts that "[t]he definition of 'income' is broad, but certainly does not include vol-untary contributions to living expenses." The definition of income is indeed broad enough to encompass the payment of personal expenses by third parties for purposes of setting child support or alimony. *See Brown v. Brown,* 76 Ark.App. 494, 68 S.W.3d 316 (2002); *Weir v. Phillips,* 75 Ark.App. 208, 55 S.W.3d 804 (2001). In *Brown,* we affirmed the trial court's imputation of a portion of the rent payment made by the former husband's girlfriend in determining the husband's income for support purposes. In *Weir,* we held that the personal use by a support obligor of a company car constituted imputed income. We noted that the obligor received a sizable benefit from such payments because, in addition to using the vehicle to travel to and from work, he also used the vehicle for personal trips and vacations. A legal right to collect monies is not a predicate to an imputation of income, as even gifts can be a source of income. *Ford v. Ford,* 347 Ark. 485, 65 S.W.3d 432 (2002) (one time $3000 gift from grandparent considered income).

We find no abuse of discretion in the trial court's adjustment of appellant's expenses as listed in his affidavit of financial means. Appellant testified that the items he had listed, for the most part, were in fact paid one-half by himself, and one-half by Ms. Edgington. Corroborating, Ms. Edgington stated "we have a joint checking account and both of our paychecks go into that and everything is taken out of that." Ms. Edgington's deposited check into a joint-checking account shared by appellant is a sizeable benefit to him, and the trial court's ruling that appellant had more than his income from which to pay his expenses [2] is consistent with our

2. The divorce decree referred to appellant's debts; however, he did not list any debts, and we assume the court meant expenses.

policy to interpret what constitutes "income" broadly.

█ The main thrust of appellant's argument on appeal centers on the trial court's "doubling" of his income. He cites to Administrative Order No. 10, codified at Arkansas Code Annotated section 9–14–201(4)(A) (Supp.2009), which states that income means any periodic payment due an individual. He asserts that Ms. Edgington's money was (1) not "due" to him, (2) that he has no legal right to collect it, and (3) that because it was voluntary, it could change at any time. Appellee states that Administrative Order No. 10 and Arkansas Code Annotated section 9–14–201 pertain to child support, not alimony. We need not rely upon the child-support guidelines because our court has said that in determining alimony, the income of both parties, from whatever source, should be considered. *See Davis v. Davis,* 79 Ark.App. 178, 84 S.W.3d 447 (2002); *Cochran v. Cochran,* 7 Ark.App. 146, 644 S.W.2d 635 (1983). However, we do find that the trial court abused its discretion in "doubling" appellant's income for alimony purposes.

█ An abuse of discretion means discretion improvidently exercised, i.e., exercised thoughtlessly and without due consideration. *Southwestern Bell Yellow Pages, Inc. v. Pipkin Enters., Inc.,* 359 Ark. 402, 198 S.W.3d 115 (2004) (citing *Arnold v. Camden News Publ'g Co.,* 353 Ark. 522, 110 S.W.3d 268 (2003)). In awarding alimony, the trial court stated that it was doubling the income listed in appellant's affidavit of financial means because there were two "checks coming in" (appellant's check and Ms. Edgington's check).[3] Commingling of their funds into a joint-checking account did not cause Ms.

Edgington's salary to be imputable to appellant such that his income included both of their salaries. There is nothing in the record indicating that appellant had control over Ms. Edgington's money beyond using it to pay their monthly expenses. The trial court's discretion was exercised improvidently when it imputed her salary to appellant in determining his income for purposes of computing alimony. Because erroneous income was used to determine whether to award alimony and to calculate the amount of alimony, we remand this case for a disposition consistent with this opinion regarding whether alimony is warranted, and if so, in what amount.

Reversed and remanded.

VAUGHT, C.J., and GLOVER, J., agree.

---

**3.** The trial court gave inconsistent explanations as to how it valued Ms. Edgington's income. It first stated that it was doubling appellant's income because there were two checks. Then, the judge said that he was not doubling the incomes, but rather taking Ms. Edgington's income into consideration.