ROBIN F. WYNNE, Associate Justice
Parrish Dare appeals from an order of the Saline County Circuit Court modifying the visitation awarded to appellee Scott Frost and denying her petition to modify the amount Frost pays in child support. She argues that the circuit court erred in finding that there had been a material change in circumstances that justified modifying Frost's visitation with the parties' child. She also argues that the trial court erred in deciding not to include the increase in the value of Frost's stock portfolio in the calculation of his child-support obligation and deciding not to impute additional income to Frost. We affirm.
While the parties lived in Virginia, they were involved in a relationship that produced one child, R.D. The parties were never married. A Virginia court ordered Frost to pay child support in the amount of $400 per month. The court awarded Frost "liberal visitation" and set a visitation schedule that alternated holidays and gave Frost two weeks in the summer with R.D. After Dare relocated to Arkansas with the child, Frost typically kept the child for three to four weeks during the summer. Frost also began paying $425 per month in child support.
In 2015, Dare began asking Frost to pay additional child support; he declined. During this same period, Dare restricted Frost's visitation to that provided for in the Virginia court order. In February 2016, Frost petitioned to register the Virginia orders in the Saline County Circuit Court. He contemporaneously filed a motion for modification in which he alleged that there had been a change in Dare's "willingness to co-parent" that constituted a material change in circumstances justifying an award of additional visitation with R.D. Dare filed a counterclaim in which she requested a modification of Frost's child-support obligation to reflect his current *283 income. The circuit court held hearings on the visitation and child-support issues. Regarding child support, Dare argued that the growth of Frost's stock portfolio should be considered in the calculation of his child-support obligation. Dare also contended that the trial court should impute Frost's income commensurate with his lifestyle. The circuit court subsequently entered an order in which it found that a material change in circumstances had occurred and modified Frost's visitation, increasing summer visitation to four weeks each summer and setting out a schedule for holiday visitation. The circuit court also found that there was insufficient evidence to impute income beyond that reported on his affidavit of financial means and ordered him to pay child support in the amount of $213.00 every two weeks based on his reported bi-weekly income of $1,174.46.
Dare appealed to our court of appeals, which affirmed on the finding of material change in circumstances and reversed and remanded on the issue of child support, with instructions for the circuit court to consider the gains in Frost's stock portfolio as income for child support purposes. Dare v. Frost , 2017 Ark. App. 325, 522 S.W.3d 146. The parties filed competing petitions for review with this court, with Dare seeking review of the portion of the circuit court order on the issue of visitation that was affirmed and Frost seeking review of the court of appeals' decision to reverse and remand on the issue of child support. Dare's petition was denied; Frost's was granted. Because, upon granting a petition for review, we consider the appeal as though it were initially filed with this court, Powell v. Lane , 375 Ark. 178, 181, 289 S.W.3d 440, 442 (2008), all issues raised in the appeal are currently before us.
Visitation
Dare's first argument on appeal is that the trial court erred in finding that Frost had proved a material change in circumstances sufficient to warrant a modification of the existing visitation order. In domestic relations cases, we review the evidence de novo and will not reverse the circuit court's findings unless they are clearly erroneous. Brown v. Brown , 2012 Ark. 89, 387 S.W.3d 159. We also give special deference to the circuit court's superior position in evaluating the witnesses, their testimony, and the child's best interest. Id. Because a circuit court maintains continuing jurisdiction over visitation, it may modify or vacate a prior visitation order when it becomes aware of a material change in circumstances since the previous order. Id. The party seeking modification has the burden of demonstrating such a material change in circumstances. Id. Regarding visitation, the primary consideration is the best interest of the child. Id. Important factors for the court to consider in determining reasonable visitation are the wishes of the child, the capacity of the party desiring visitation to supervise and care for the child, problems of transportation and prior conduct in abusing visitation, the work schedule or stability of the parties, and the relationship with siblings and other relatives. Id. We have held that fixing visitation rights is a matter that lies within the sound discretion of the circuit court. Id.
In its order modifying visitation, the circuit court found that Dare had exposed R.D. to inappropriate circumstances and had been negative toward Frost to such a degree that it caused strain between R.D. and Frost. The testimony at the hearing on visitation was that at some point in 2011, the parties had agreed to modify the visitation schedule to allow Frost more time with R.D. during the summer. He *284 was typically given three to four weeks instead of the two specified in the Virginia order. During his testimony, Frost read from an email sent to him by Dare in which she stated that if he did not pay more than was required by the child-support guidelines, she would not do anything outside of the visitation guidelines. Dare repeated that stance in her testimony. Frost testified that in 2015, he was informed that, instead of spending four weeks with him, R.D. would spend two weeks in Virginia and two weeks with a friend of Dare's in Texas. Frost also testified regarding a Thanksgiving visitation when Dare sent R.D. to his home with a mostly empty suitcase. Dare testified that this was intended as a message to Frost that he was not taking responsibility for R.D.'s care while she was with him. Frost further testified that Dare told him that she allowed R.D. to read their correspondence regarding child support, which included statements by Dare that he was not doing enough for R.D. Frost stated that this resulted in different behavior toward him by R.D. Frost stated that he felt like Dare pushed him out and made R.D. feel like it was acceptable to minimize his part in her life.
The testimony at the hearing was sufficient to establish that the parties' ability to cooperate regarding R.D.'s visitation had deteriorated since the Virginia visitation order was entered. The parties had voluntarily modified the visitation order, presumably because this was in R.D.'s best interest. Dare unilaterally changed the visitation back to that specified in the Virginia order, and there was evidence from which the circuit court could reasonably conclude that this was done not because it was in R.D.'s best interest but because of issues Dare was having with Frost, specifically her unhappiness with the amount of child support he was paying. There was also testimony that Dare's actions, which included showing R.D. communications between the parties, affected the relationship between Frost and R.D. While Dare naturally seeks to counter this evidence, as stated above, we defer to the circuit court on issues regarding the credibility of the witnesses and the weight to be given to their testimony. See Brown , 2012 Ark. 89, 387 S.W.3d 159. Under these circumstances, we conclude that the change in the parties' interactions with each other constitute a material change in circumstances sufficient to warrant a modification of visitation.[1] We affirm the circuit court's order modifying the visitation schedule.
Child Support
Dare next argues that the circuit court erred by not including the increase in value of Frost's stock portfolio in the calculation of his child-support obligation. Arkansas Supreme Court Administrative Order Number 10 defines "income" as any form of payment, periodic or otherwise, due to an individual, regardless of source, including wages, salaries, commissions, bonuses, workers' compensation, disability, payments pursuant to a pension or retirement program, and interest less proper deductions. It is the policy of the state to interpret "income" broadly for the benefit of the child. Ark. Sup. Ct. Admin. Order No. 10.
Frost testified that he had approximately $40,000 in stocks. He also testified that he does not receive any money from the stocks and that any increase stays in the portfolio. In its order, the circuit court denied Dare's request that the stock dividends *285 be included as part of Frost's income, based on the court's conclusion that the growth of the portfolio should be counted as income for child support purposes only when the growth is "realized" by the owner. The order states that any disbursements from Frost's investment account are to be utilized in calculating his child support.
Dare contends that the circuit court's order permits Frost to take his income from his stocks and reinvest it instead of treating it as income. But it is not clear from the record that Frost has "income" from the portfolio. Frost testified that he does not see any money from his stock portfolio. While Dare suggests that the increase be treated as a bonus for purposes of determining child support, we cannot determine from this record whether this is possible, as there is no evidence in the record to indicate what form the capital gains and dividends from the portfolio reflected on Frost's tax returns have taken, nor is there any indication as to whether they may be accessed and used by Frost in the same manner as a bonus check. The order requires Frost to treat funds he receives from the investment account as income in calculating child support, while not requiring him to treat an unrealized increase in his portfolio's value as income. This would require Frost to include cash dividends or realized gains he receives from his stocks in the amount of child support to be paid. On this record, we cannot conclude that the circuit court erred, as the record is insufficient to establish that the portfolio activity sought by Dare to be included in the child support calculation constitutes income as defined in Administrative Order Number 10.
Dare's final argument is that the trial court erred by declining to impute income to Frost based on his lifestyle. Administrative Order Number 10 states as follows regarding imputing income:
If a payor is unemployed or working below full earning capacity, the court may consider the reasons therefor. If earnings are reduced as a matter of choice and not for reasonable cause, the court may attribute income to a payor up to his or her earning capacity, including consideration of the payor's life-style. Income of at least minimum wage shall be attributed to a payor ordered to pay child support.
Dare contends that Frost's reported income does not match up with his expenses. Based on this, she concludes that he must be shielding income. Frost testified that he is employed as a behavioral-specialist counselor earning $1071 semi-monthly, and his wife's employment and savings contribute toward paying their expenses. The record contains no evidence to indicate that Frost is working below his full earning capacity. We hold that the circuit court did not err in declining to impute additional income to Frost.
Affirmed; court of appeals opinion vacated.
Baker, Goodson, and Hart, JJ., concur in part and dissent in part.

We wish to stress that these circumstances are being applied to a modification of visitation, not a modification of custody.