Cite as 2020 Ark. App. 294

# ARKANSAS COURT OF APPEALS
DIVISION II, III & IV
No. CV-19-363

| | |
|---|---|
| WILLIAM B. CHERRY<br>    APPELLANT/CROSS-APPELLEE<br><br>V.<br><br>RHONDA MARLENE CHERRY<br>(NOW FULKROAD)<br>    APPELLEE/CROSS-APPELLANT | Opinion Delivered: May 13, 2020<br><br>APPEAL FROM THE COLUMBIA COUNTY CIRCUIT COURT<br>[NO. 14DR-14-245]<br><br>HONORABLE SPENCER G. SINGLETON, JUDGE<br><br>AFFIRMED ON DIRECT APPEAL;<br>AFFIRMED ON CROSS-APPEAL |

**RITA W. GRUBER, Chief Judge**

The parties in this case, William Cherry and Rhonda Cherry (now Fulkroad), were divorced by a decree entered on February 3, 2016,[1] after twenty-five years of marriage. William appeals from the divorce decree and a postdecree order, arguing that the circuit court erred in (1) calculating income for purposes of alimony; (2) awarding alimony as a substitute for division of nonmarital property; (3) holding him in contempt, calculating an arrearage, and imposing a fine for nonpayment of alimony; and (4) finding no change of circumstances to support a reduction or elimination of the alimony award. Rhonda cross-appeals, arguing that the circuit court erred in (1) finding that two annuities resulting from William's personal-injury settlement were not marital property, and (2) refusing to order

---

[1]This is the second time this case has been before us. In *Cherry v. Cherry*, 2017 Ark. App. 245, we dismissed for lack of a final order because the divorce decree did not dispose of the counterclaim for divorce filed by William. A final order is now before us.

William to obtain a life-insurance policy or maintain her as beneficiary on the annuities to secure payment of alimony after his death. We affirm.

I. *Facts*

William and Rhonda married in 1990 and have two children. William was a truck driver, and Rhonda stayed at home to care for their children. In addition, Rhonda took care of William's mom who suffered from Alzheimer's and lived with them for twelve years prior to her death. On March 20, 2006, William was driving his truck on the job when another truck broadsided him. The accident resulted in severe traumatic injuries, which left him permanently disabled and unable to work.

William filed a personal injury suit and reached a settlement in 2009, which is the main focus of the present appeal. The approximately four-million-dollar settlement consisted of three annuities. The first annuity is a Medicare set-aside annuity that pays William $11,602 annually to cover his medical expenses or reimburse Medicare. The annual lump-sum payments are guaranteed for thirty-two years with the last payment to be made in April 2041.

The other two annuities are almost identical. One pays William $2,903 monthly for life, guaranteed for thirty years, as well as lump-sum payments every five years—$25,000 in May 2013, $50,000 in May 2018, $50,000 in May 2023, $50,000 in May 2028, and $100,000 in May 2033. The other annuity pays William $2950 monthly for life, guaranteed for thirty years, with an identical lump-sum payment schedule. In addition to the annuity payments, William receives $826 in Social Security disability benefits each month.

Rhonda filed for divorce on December 23, 2014, requesting temporary and permanent alimony. William filed a counterclaim for divorce. At the temporary hearing, the court ordered temporary alimony of $1600 a month. Prior to the final hearing, the parties reached an agreement as to the majority of their marital property but asked the circuit court to determine the status of William's annuities and Rhonda's request for permanent alimony.

Following the hearing, the circuit court entered an order on February 3, 2016, granting Rhonda a divorce, finding that the annuities were not marital property, and ordering William to pay Rhonda permanent alimony of $2750 a month. William appealed from this order, and Rhonda cross-appealed. See footnote 1.

After dismissal, Rhonda filed a motion for contempt on June 22, 2018, stating in part that William had failed to pay the full amount of the court-ordered alimony and asking the court to order William to obtain a life-insurance policy to secure payment of the alimony award or to maintain her as a beneficiary on the annuities. William denied that he was in contempt claiming that he had been paying monthly alimony of $1800 based on the parties' "agreement" and asked the court to reconsider the award of permanent alimony, or alternatively, to modify it based on a material change in circumstances.

In a December 31, 2018 order, the circuit court (1) dismissed William's counterclaim for divorce; (2) found William in contempt for failing to pay the court-ordered alimony, ordered him to pay $44,850 in arrears to be paid within thirty days, and if not paid within thirty days, ordered that he be fined $50 a day until the judgement is satisfied; (3) denied Rhonda's request that William be ordered to obtain life insurance or maintain her as the

3

beneficiary on the annuities; (4) declined to amend the order of alimony on reconsideration; (5) and denied William's request for modification of alimony based on changed circumstances. William filed a timely notice of appeal, and Rhonda filed a timely notice of cross-appeal.

We first turn to Rhonda's cross-appeal because her first point may be dispositive of William's arguments pertaining to the award of alimony and her second point can be addressed independent of William's direct appeal.

## II. *Rhonda's Cross-Appeal*

### A. The Circuit Court Erred When It Ruled that the Income Annuities from the Personal-Injury Settlement Were Not Marital Property under Arkansas Code Annotated Section 9-12-315(b)(6)

Rhonda argues that the circuit court erred when it ruled that the income annuities from the personal injury settlement were not marital property under Arkansas Code Annotated section 9-12-315(b)(6) (Repl. 2015).

Divorce cases are reviewed de novo. *Kelly v. Kelly*, 2011 Ark. 259, at 5–6, 381 S.W.3d 817, 822–23. A circuit court's determination of whether certain property is marital property is a fact question that will not be reversed unless it is clearly erroneous. *Hargrove v. Hargrove*, 2015 Ark. App. 45, at 1–2, 453 S.W.3d 683, 684. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a distinct and firm conviction that a mistake has been committed. *Id.*

Arkansas Code Annotated section 9-12-315(b)(6), provides:

> (b) For the purpose of this section, "marital property" means all property acquired by either spouse subsequent to the marriage except:
>
> . . . .

4

(6) Benefits received or to be received from a workers' compensation claim, personal injury claim, or Social Security claim when those benefits are for any degree of permanent disability or future medical expenses[.]

Here, it is undisputed that William's injury occurred during the marriage; he is permanently disabled as a result of the accident and no longer able to work; and his personal injury suit was settled in the form of three annuities in 2009. The only dispute is whether the annuities fall within the exception of section 9-12-315(b)(6)—benefits received or to be received from a personal injury claim when those benefits are for any degree of permanent disability or future medical expenses.

Rhonda argues, as she did below, that the two almost identical annuities do not fall within the exception.[2] The circuit court found that because William is totally and permanently disabled, the annuity payments and the monthly Social Security payments received by William cannot be designated as marital property because of the exclusion under Arkansas Code Annotated section 9-12-315(b)(6).

Relying on *Clayton v. Clayton*, 297 Ark. 342, 760 S.W.2d 875 (1988), Rhonda contends that subsection (b)(6) excepts only the portion of the personal injury claim for permanent disability or medical expense. In contrast to the present case, the personal injury claim in *Clayton* had not been liquidated at the time of the divorce, and the supreme court remanded for further proceedings to determine whether the benefits, if any, from the claim must be considered marital property. The supreme court explained that

[Act 676 of 1987] excepted from marital property only those benefits from an unliquidated personal injury claim that would be for any degree of permanent

---

[2]Rhonda acknowledges that the Medicare annuity is not marital property.

disability or future medical expenses. With these specific benefits excepted, the remaining benefits or elements of damage from one's personal injury claim are subject to division as marital property pursuant to Ark. Code Ann. § 9-12-315(a)(1)(A).

*Clayton*, 297 Ark. at 344, 760 S.W.2d at 877.[3]

After *Clayton*, the supreme court stated in *Mason v. Mason*, 319 Ark. 722, 731, 895 S.W.2d 513, 517 (1995), that "the mere labeling of a claim as 'personal injury' does not satisfy the requirement for exemption from marital property. It is necessary that the claim be for a degree of permanent disability or future medical expenses." The *Mason* court implemented a two-prong test to determine whether a claim labeled as a "personal injury" satisfies the requirement for an exemption from marital property: (1) the claim must be for a degree of permanent disability or future medical expenses, and (2) the injury must be sustained on the job or in the consequence of a tortious act. *See Skelton v. Skelton*, 339 Ark. 227, 237, 5 S.W.3d 2, 7 (1999); *Collins v. Collins*, 347 Ark. 240, 61 S.W.3d 818 (2001).

In both *Collins* and *Skelton*, the appellants challenged the circuit court's findings that the settlements were excepted from the definition of marital property. The supreme court affirmed in both cases. In *Collins*, the court held that overwhelming evidence supported the circuit court's conclusion that the award was for a degree of permanent disability and not subject to division. *Collins*, 347 Ark. at 251, 61 S.W.3d at 826. The *Skelton* court stated that

---

[3]Rhonda, in contravention of our rule that prohibits citation to unpublished opinions, cites *Montroy v. Montroy*, 2007 WL 2852619, for the proposition that William had the burden to prove which part of his settlement was for his disability and exclude other damages that would be considered marital property. Rule 5-2(c) provides that supreme court and court of appeals opinions "issued before July 1, 2009, and not designated for publication shall not be cited, quoted, or referred to by any court or in any argument, brief, or other materials presented to any court (except in continuing or related litigation upon an issue such as res judicata, collateral estoppel, or law of the case)."

the parties did not dispute that Mr. Skelton was injured on the job or the 1991 determination that Mr. Skelton suffered from an anxiety disorder. *Skelton*, 339 Ark. at 237, 5 S.W.3d at 7. The court noted that eight years after the 1991 determination, Mr. Skelton continued to be compensated for that disability; therefore, the continued compensation reflects he still suffered from a degree of permanent disability. *Id.*

William contends that the circuit court correctly employed the two-prong test set out in *Mason*, *supra*, in its letter ruling:

> There is no question but that the defendant is totally and permanently disabled and that he continues to be under the care of doctors and seeks medical care at least monthly. He is taking numerous medications daily and pays significant medical bills and incurs other expenses regularly as a result of his injuries. Upon review of the Arkansas statutory law and recent cases dedicated to this issue, the Court is of the opinion that the periodic payments received by the defendant as a result of the structured settlement and the income received by reason of his workers' compensation claim of $810.00 monthly, cannot be designated as martial property and therefore subject to division by the Court.

Here, both prongs of the *Mason* test are met. There is no dispute that William was driving his truck when another truck struck him broadside, causing severe traumatic injuries. William sued the parties responsible for the accident and reached a settlement. It is also undisputed that William is permanently disabled and is unable to work. On these facts, we cannot say that the circuit court's finding that the annuities were not marital property is clearly erroneous.

## B. The Circuit Court Erred in Failing to Order William to Purchase a Life Insurance Policy or to Not Change the Beneficiary on the Two Income Annuities

For her second point on cross-appeal, Rhonda contends that the circuit court erred in failing to order William to purchase a life-insurance policy or to not change the beneficiary on the two income annuities payable for his lifetime in order to secure payment

of the alimony after William's death. Rhonda made this request in her motion for contempt. The circuit court denied her request, recognizing that while there may be some authority to support her argument, it is the legislature's intent for alimony to cease upon the death of either party. William responds that to the extent that the payments designated by the circuit court are alimony, security is inappropriate.

Arkansas Code Annotated section 9-12-312(a)(2) provides in part:

(2) Unless otherwise ordered by the court or agreed to by the parties, the liability for alimony shall automatically cease upon the earlier of:

. . . .

(A) The death of either party[.]

Rhonda cites *Farrell v. Farrell*, 2014 Ark. App. 601, in support of her argument. In that case, we reversed and remanded because the circuit court failed to comply with Arkansas Code Annotated section 9-12-315 and there was uncertainty as to whether the $13,000 monthly payment was payment of wife's share of marital property or payment of alimony to equalize an unequal distribution of the marital estate. *Farrell*, 2014 Ark. App. 601, at 3. We noted that if the circuit court was attempting to have husband pay wife for her share of the marital property, it should have upheld its original order to have husband provide wife with some form of security such as life insurance, citing *Rudder v. Hurst*, 2009 Ark. App. 577, 337 S.W.3d 565.

In *Rudder*, this court upheld the circuit court's order directing a husband, who was ordered to pay child support and alimony, to maintain a life insurance policy to secure both

8

obligations. *Rudder*, 2009 Ark. App. 577, at 11–12, 337 S.W.3d at 573–74.[4] There, we recognized that our supreme court in *Raney v. Raney*, 262 Ark. 747, 561 S.W.2d 287 (1978), affirmed a circuit court's order that the husband maintain a life-insurance policy in lieu of giving the wife an interest in marital property. In addition to *Raney*, we noted that Arkansas Code Annotated section 9-12-312(c)(1) provides that a court *may* require a person ordered to pay money for the support and care of any children to post a bond or give some other guarantee. We held that the circuit court had the authority to order appellant to maintain a life insurance policy because "[b]ecause the supreme court has indicated its approval of an order requiring the maintenance of a life insurance policy under these circumstances, and based on section 9-12-312(c)(1)." *Rudder*, 2009 Ark. App. 577. at 11–12, 337 S.W.3d at 573–74.

The present case is distinguishable because it does not involve either child support or payment for marital property. Because alimony generally terminates upon the death of the payor unless otherwise ordered by the court or agreed to by the parties, and because it does not involve any payment for marital property or child support, we cannot say that the circuit court erred in refusing to order William to secure payment of the alimony award in the event of his death.

### III. *William's Direct Appeal*

#### A. The Circuit Court Erred in Calculating William's Monthly Available Resources to Include Amounts Received Annually or Every Five Years

---

[4]At the time of the 2008 divorce in *Rudder*, the children were about eight and ten years old, and the court awarded temporary alimony for three years.

An award of alimony is not mandatory but is solely within the circuit court's discretion. *Nauman v. Nauman*, 2018 Ark. App. 114, at 7, 542 S.W.3d 212, 216. We will not reverse absent an abuse of that discretion. *Id.* An abuse of discretion means discretion improvidently exercised, i.e., exercised thoughtlessly and without due consideration. *Id. Foster v. Foster*, 2015 Ark. App. 530, 472 S.W.3d 151. The circuit court is in the best position to view the needs of the parties in connection with an alimony award. *Id.* If alimony is awarded, it should be set at an amount that is reasonable under the circumstances. *Id.*

William argues on appeal that the circuit court erred in calculating his income to include lump-sum annuity payments received annually or every five years. He suggests that his income for purposes of calculating alimony should have included only the monthly annuity payments of $2950 and $2903, as well as monthly Social Security income of $826, which totals $6,679.[5] He argues that the circuit court calculated alimony using an incorrect monthly income of $9600.

Citing *Craig v. Craig*, 2010 Ark. App. 718, 379 S.W.3d 590, William contends that it is error for the circuit court to include money not available to a payor in determining income for alimony purposes. That case, however, involved a situation in which the court improperly considered a payor's girlfriend's income deposited into a joint account. This court held that the circuit court's discretion was exercised improvidently when it imputed the payor's girlfriend's salary in determining his income for alimony. *Id.* at 7–8, 379 S.W.3d at 594.

---

[5]At the time of the November 2018 hearing, William's monthly Social Security income was $804.

In determining William's income, the circuit court's order provided:

> 7. A Medicare Set Aside fund/account in the defendant's name pays him a lump sum amount of $11,600.00, annually. This is to go toward his future medical or to reimburse Medicare. A separate contract pays the defendant $2,950.86 monthly plus lump sum payment of $50,000.00 every five years from May 2018 through 2028 and a final payment of $100,000.00 in May 2033. A third contract pays the defendant $2,903.00 monthly plus lump sums of $50,000.00 every five years from May 2018 through May 2028 and a final sum of $100,000.00 in May 2033. Therefore, the defendant can expect to receive approximately $8,000.00 monthly by reason of the three contracts plus a total of $100,000.00 every five years for an average of an additional $1,666.00 per month from the lump sums. Thus, the defendant can be expected to receive net monthly amounts of approximately $9,600.00.

The circuit court's calculation of income is confusing at first glance. However, the total income from all sources except the two $50,000 periodic lump-sum annuity payments amounts to approximately $7645.[6] The circuit court appears to have rounded this number to $8000 before adding the two guaranteed lump-sum annuity payments of $50,000 every five years that equal $1666.66 (100,000/60 months = 1666.66) to reach the $9600 figure, which the court referred to as the "approximate amount" of income.[7]

In determining alimony, the income of both parties, from whatever source, should be considered. *Craig v. Craig*, 2010 Ark. App. 718, at 7, 379 S.W.3d 590, 594 (citing *Davis v. Davis*, 79 Ark. App. 178, 84 S.W.3d 447 (2002); *Cochran v. Cochran*, 7 Ark. App. 146, 644 S.W.2d 635 (1983)). Similarly, the definition of income under the child-support guidelines is broadly construed. *Dare v. Frost*, 2018 Ark. 83, at 6. In determining income for

---

[6]The sources included the $826 monthly Social Security, the $2950 monthly annuity, the $2902 monthly annuity, and $966, which represents the Medicare annuity of $11,600 divided monthly.

[7]The circuit court did not include the final lump-sum payments of $100,000 for each annuity to be received in May 2033.

purposes of child support, this court has stated that common sense dictates that an average of appellant's monthly income over a year or two years will present a truer picture of his income than a calculation derived solely by reference to one of the highest earning months. *Delacey v. Delacey*, 85 Ark. App. 419, 428, 155 S.W.3d 701, 706 (2004). Our supreme court approved this method in *Taylor v. Taylor*, 369 Ark. 31, 250 S.W.3d 232 (2007).

Here, the circuit court considered what William's average monthly income would be including the periodic, lump-sum amounts that he had received in the past and will receive in the future.[8] Although William characterizes these periodic amounts as "imputed" amounts, these amounts are *guaranteed* to be paid to him. In reviewing an alimony award, our role is to simply determine whether the circuit court abused its discretion. *Medlen v. Medlen*, 2020 Ark. App. 159, at 8–9. We are not to substitute our judgment for that of the circuit court. *Id.*; *see also Harbour v. Harbour*, 230 Ark. 627, 324 S.W.2d 115 (1959). As stated previously, the circuit court was in the best position to determine the needs of the parties in connection with the alimony award. On these unique facts and considering our standard of review, we cannot say that the alimony award was an abuse of the circuit court's discretion.

B. The Circuit Court Erred in Awarding Alimony as a Substitute for Division of Nonmarital Property

---

[8]While the dissent characterizes the lump-sum annuity payments payable every five years as "future income," it should be noted that two $25,000 payments were paid in May 2013, prior to divorce action, which began in December 2014. Likewise, just prior to William's July 2018 motion for reconsideration or modification of the support order, an additional two $50,000 payments were paid in May 2018.

Although William claims his point on appeal is that the circuit court erred in awarding alimony as a substitute for division of nonmarital property, he is essentially challenging the alimony award. He argues that the award of permanent alimony without reference to Rhonda's need or his ability to pay show that the award was used as a substitute for a division of the annuities, which the court correctly declared to be nonmarital property.

Arkansas Code Annotated section 9-12-312(a) states that the circuit court may enter an order concerning alimony that is "reasonable from the circumstances of the parties and the nature of the case." As stated above, the circuit court is in the best position to view the needs of the parties in connection with an alimony award. *Foster, supra.* In determining the amount of alimony to be awarded, the circuit court is given great discretion, and the appellate courts will not disturb the award on appeal unless there is an abuse of that discretion. *Farrell v. Farrell*, 2017 Ark. App. 7, at 7–8, 510 S.W.3d 787, 792.

The purpose of alimony is to rectify the economic imbalance in earning power and standard of living of the parties to a divorce in light of the particular facts of each case. *Id*. The primary factors to be considered in making or changing an award of alimony are the need of one spouse and the ability of the other spouse to pay. *Id*. Secondary factors to be considered by the circuit court include (1) the financial circumstances of both parties; (2) the amount and nature of the income, both current and anticipated, of both parties; (3) the extent and nature of the resources and assets of both parties; and (4) the earning ability and capacity of both parties. *Id*. The amount of alimony awarded should not be reduced to a "mathematical formula" because the need for flexibility outweighs the need for relative certainty. *Id*.

William suggests that the court failed to consider the primary factors of Rhonda's need and his ability to pay but does acknowledge that the court considered some of the secondary factors. He stated that his monthly expenses before alimony were $6120. The divorce decree provides:

> 10. The plaintiff is forty-four years old. She has a very limited work history. She is physically capable of working. However, she has no training and no high school education or GED. She currently works part time and earns approximately $120.00 per week. Based upon the parties' respective incomes and the plaintiff's ability to earn monies in the future, as well as other resources that are available to the parties, the plaintiff should be entitled to a permanent alimony.

> 11. Upon considering the defendant's total sources of income, $2,750.00 per month is a reasonable amount of permanent alimony for him to pay the plaintiff, commencing October 1, 2015. . . .

These statements demonstrate that the court considered Rhonda's need and William's ability to pay as well as additional factors. The court heard much testimony regarding the parties' incomes and expenses. At the time of the divorce decree, Rhonda and William had respective incomes of approximately $400 and $9300 a month. After the award of alimony, the parties had respective monthly incomes of $3150 and $6650.

As he did in his first point on appeal, William challenges the inclusion of the periodic payments for calculating alimony. He points out that at the temporary hearing, the circuit court did not include the periodic payments received every five years in awarding temporary alimony stating that it would not be fair to do so because the money is not available to him. William argues that the circuit court when awarding permanent alimony did "exactly what it had determined to be unfair." His characterization of what the circuit court said is incomplete. The circuit court stated:

14

So I don't think it would be fair at this point to – for the purpose of this hearing to state that he would have available to him for the purpose of paying spousal support the payments that are given every five years in that that money is just not available to him, and I don't know that it will be.

The February 4, 2015 temporary hearing was held shortly after William had filed his answer and counterclaim. Given the complexity of the issues regarding the annuities, the court declined to consider the periodic payments at that time for the purpose of temporary support.

The circuit court has the authority to make an award of alimony that is reasonable under the circumstances, and we will not disturb the award on appeal unless there is an abuse of that discretion. *See* Ark. Code Ann. § 9-12-312(a); *Farrell*, *supra*. On this record, we cannot say that the circuit court exercised its discretion improvidently, thoughtlessly, or without due consideration.

### C. The Circuit Court Erred in Holding William in Contempt, Calculating an Arrearage, and Imposing a Fine for Nonpayment

Disobedience of any valid judgment, order, or decree of a court having jurisdiction to enter it may constitute contempt, and punishment for such contempt is an inherent power of the court. *Balcom v. Crain*, 2016 Ark. App. 313, at 3, 496 S.W.3d 405, 407. We will not reverse a circuit court's finding of civil contempt unless that finding is clearly against the preponderance of the evidence. *Id.* at 4, 496 S.W.3d at 408.

The divorce decree ordered William to pay Rhonda $2750 a month in permanent alimony beginning on October 1, 2015. Subsequent to the decree, William continued to pay $1600 a month, the amount he was ordered to pay in the temporary order but increased it to $1800 a month when one of their adult daughters moved in with Rhonda.

15

Rhonda filed a motion for contempt on June 22, 2018, alleging that William willfully failed to abide by the court's order to pay $2750 monthly and instead continued to pay according to the temporary order, resulting in an arrearage of over $36,800. William responded that he was paying at the rate "agreed to by the parties."

Following the November 2018 hearing, the circuit court took the matter under advisement. On December 31, the court found William in contempt for failing to pay the court-ordered alimony of $2750. The court considered his claim that he was paying $1800 a month but found that William conceded at the hearing that he had "volunteered" to pay the additional $200. The circuit court suspended sanctions and awarded Rhonda a judgment for the $44,850 in arrears to be paid within thirty days of the order. The court additionally ordered that if William failed to pay within thirty days, he would be fined $50 a day until the judgment is satisfied.

William argues that Rhonda should be estopped from claiming an arrearage after leading him to believe they had agreed to a different amount. We cannot say that the circuit court's finding that William willfully failed to pay $2750 a month in alimony is clearly erroneous. At the hearing, William acknowledged that he was aware that he was ordered to pay $2750 and was not doing so. He also testified that he had been advised that there could be a judgment against him.

William argues on appeal that his inability to pay is a defense to contempt. He did not, however, raise this below. The only affirmative defense raised in his motion was that he was paying at the rate "agreed to by the parties." Inability to pay is a defense to a contempt citation unless the inability is due to action or inaction on the part of the appellant.

16

*Aswell v. Aswell*, 88 Ark. App. 115, 120, 195 S.W.3d 365, 368 (2004). Even considering this argument, William testified to many new financial obligations he took on by choice subsequent to the court's order setting alimony. Thus, any inability to pay was due to his own actions.

Alternatively, William requests that he be given a credit for the extra $200 he paid in calculating his arrears. The court found that the payment of an additional $200 was voluntary and this finding is not clearly erroneous.

Finally, William contends that the circuit court's erred in ordering him to pay a $50 per day fine if the judgment for arrears was not paid within thirty days. A contempt fine for willful disobedience that is payable to the complainant is remedial and therefore constitutes a fine for civil contempt, but if the fine is payable to the court, it is punitive and constitutes a fine for criminal contempt. *Applegate v. Applegate*, 101 Ark. App. 289, 294, 275 S.W.3d 682, 685 (citing *Omni Holding & Dev. Corp. v. 3D.S.A., Inc.*, 356 Ark. 440, 454, 156 S.W.3d 228, 238 (2004) ("Here, the fine is to be paid to the complainant, and we conclude that it is for civil contempt.")).

In the present case, the order provided that the circuit court "suspends the imposition of any sanctions for contempt at this time." The order merely provided that a $50 per day fine was to be paid *if* the judgment for arrearages was not paid within thirty days.[9] This predetermined sanction for failure to pay the arrearage is not ripe for review. *Turner v. Brandt*, 100 Ark. App. 350, 353, 268 S.W.3d 924, 926 (2007).

---

[9]We note that the order did not state to whom the fine was to be paid.

D. The Circuit Court Erred in Finding No Change of Circumstances to Support a
Reduction or Elimination of the Alimony Award

An award of alimony is always subject to modification upon application of either party. Ark. Code Ann. § 9-12-314 (Repl. 2015). Such modification must be based, however, on a change in the circumstances of the parties. *Becker v. Becker*, 2019 Ark. App. 230, 575 S.W.3d 608. The primary factors to be considered in making or changing alimony are the need of one spouse and the ability of the other spouse to pay. *Id.* A decision regarding alimony is a matter that lies within the circuit court's sound discretion and will not be reversed on appeal absent an abuse of that discretion. *Id.*

In his request for modification of alimony, William alleged that Rhonda's situation had improved significantly, and his ability to pay had declined significantly, although his income remained about the same. In denying the request, the circuit court found that while Rhonda had obtained permanent employment, her income "remains relatively limited and considerably less than that of [William]."

William argues that at the time of the divorce in 2015, Rhonda was making only $100 per week but now makes approximately $1500 per month. He suggests that this increase in earnings is not insignificant, especially considering that it amounts to what their household income was prior to his accident. In addition, he argues that his inability to pay has substantially decreased, which he attributes to his medical expenses "drastically increasing." William's calculation of his medical expenses admittedly included amounts that were not recurring or items that had not yet been paid by insurance.

Most importantly, William contends that the circuit court failed to consider Rhonda's need and his ability to pay. While the order may not say those words, the circuit

court heard testimony and considered the parties' affidavits of financial means and posthearing briefs in denying his request for modification. The court ultimately found that Rhonda's income remains "limited" and considerably less than William's income. We cannot say that the circuit court abused its discretion in denying William's request for modification.

Affirmed on direct appeal; affirmed on cross-appeal.

ABRAMSON, WHITEAKER, VAUGHT, and BROWN, JJ., agree.

VIRDEN, HARRISON, KLAPPENBACH, and HIXSON, JJ., concur in part; dissent in part.

VIRDEN and HIXSON, JJ., dissent.

**BRANDON J. HARRISON, Judge, concurring in part and dissenting in part**. My disagreement with the majority focuses on William Cherry's first point on appeal, which presents the following issue of first impression for Arkansas's alimony law: did the circuit court err when it used money that Cherry won't receive for many months, and in some cases many years, to set his present monthly alimony obligation? The answer is yes. Therefore, the circuit court's alimony award should be reversed and the case remanded for a recalculation. And any alimony arrearage based on Cherry's mistakenly inflated monthly income should also be recalculated.

In his 2015 affidavit of financial means, Cherry asserted that his monthly income consists of his Social Security ($826) and $2,903 and $2,950 per month from two annuities—all of which totals $6,679. He argues that the circuit court abused its discretion when it determined that his monthly income is $9,600, an approximately $2,920 inflation of what

19

he receives each month. The sources of the inflation were a Medicare set-aside payment of $11,602, which Cherry receives one time every year, and lump-sum payments that he receives every five years from additional annuities. Cherry says that the $2,750 per month in permanent alimony the circuit court ordered him to pay Fulkroad arose from this mistaken calculation of his monthly income. I agree.

The purpose of alimony is to rectify the economic imbalance in the earning power and standard of living of the divorcing parties given the particular facts of each case. *Nauman v. Nauman*, 2018 Ark. App. 114, 542 S.W.3d 212. The primary factors to be considered in determining whether to award alimony are the financial need of one spouse and the other spouse's ability to pay. *Kuchmas v. Kuchmas*, 368 Ark. 43, 243 S.W.3d 270 (2006). In addition, the following secondary factors should be considered: (1) the financial circumstances of both parties; (2) the couple's past standard of living; (3) the value of jointly owned property; (4) the amount and nature of the parties' income, both current and anticipated; (5) the extent and nature of the resources and assets of each of the parties; (6) the amount of income of each that is spendable; (7) the earning ability and capacity of each party; (8) the property awarded or given to one of the parties, either by the court or the other party; (9) the disposition made of the homestead or jointly owned property; (10) the condition of health and medical needs of both husband and wife; (11) the duration of the marriage; and (12) the amount of child support. *Moore v. Moore*, 2016 Ark. 105, 486 S.W.3d 766. If alimony is awarded, it should be an amount that is reasonable under all the circumstances. *Williams v. Williams*, 2018 Ark. App. 79, 541 S.W.3d 477.

20

An unreasonable amount of alimony was set in this case. There is no dispute that the lump-sum annuity payments every five years will be future income for Cherry and that the monthly annuity payments are current income for Cherry. (Whether an annual lump-sum Medicare set-aside payment can be income for alimony purposes was not squarely challenged, so those payments have been treated as an income source in this case.) It's true that this court, and our supreme court, have agreed that "averaging a person's fluctuating monthly income over a period of one or two years presents a 'truer picture' of the person's income than a calculation based on just one month." *Taylor v. Taylor*, 369 Ark. 31, 40, 250 S.W.3d 232, 239 (2007) (citing *Delacey v. Delacey*, 85 Ark. App. 419, 428, 155 S.W.3d 701, 706 (2004)). But those child-support cases refer to a payor's income that had already been received. They don't address lump-sum annuity payments that won't be realized for years to come. No case embodies the rule of alimony law that the majority has wrought today. In fact, the contrary principle has arguably been applied recently by our supreme court. *See Dare v. Frost*, 2018 Ark. 83, at 6, 540 S.W.3d 281, 285 (affirming a circuit court's conclusion that the growth of a portfolio should be counted as income for child-support purposes only when the growth is "realized" by the owner).

This court should be ruling this way today: when Cherry gets paid the annuity lump-sum payments and Medicare set-aside sums, then Fulkroad may promptly petition the court for some percentage of them; the court can then address the request. In the meantime, Cherry should not be made to pay a monthly alimony obligation based on a monthly income calculation that is much greater than what he in fact receives. The ruling is unfair because

it ensures that Fulkroad gets certain annuity and Medicare set-aside money before the designated recipient himself gets it.

★ ★ ★

*Paying it forward* is a noble thing to do for the patron behind you at Starbucks; but it's unwise to use the concept in an alimony case. When Cherry gets the money *in futuro*, Fulkroad can ask for some of it. In the meantime, the circuit court's alimony award should be reversed and the case remanded so the court can recalculate Cherry's present alimony obligation. Any related arrearage that accrued based on the inflated obligation should also be reconsidered.

I join the remainder of the majority opinion.

VIRDEN, KLAPPENBACH, and HIXSON, JJ., join.

**KENNETH S. HIXSON, Judge, dissenting**. I disagree with the majority's holding, "On this record and considering our standard of review, we cannot say that the alimony award was an abuse of the circuit court's discretion"; therefore, I respectfully dissent.

In *Moore v. Moore*, 2016 Ark. 105, 486 S.W.3d 766, our supreme court held that divorce cases are reviewed de novo citing *Skokos v. Skokos*, 344 Ark. 420, 40 S.W.3d 768 (2001). It further stated,

> We *review the circuit court's findings pertaining to . . . alimony and affirm them unless they are clearly erroneous* or against the preponderance of evidence." *Id.*; *Taylor v. Taylor*, 369 Ark. 31, 250 S.W.3d 232 (2007). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Skokos*, 344 Ark. at 425, 40 S.W.3d at 772. *The appellant must show that the trial court abused its discretion* by making a decision that was arbitrary or groundless.

(Emphasis added.) Regardless of the apparent dichotomy regarding the standard of review, I would hold the circuit court's decision to use future lump-sum annuity payments in its calculation of a present-day alimony award is in error and reverse and remand.

The majority cites the following cases in support of its conclusion that the circuit court did not err in using future lump-sum annuity payments in calculation of present-day alimony: *Foster v. Foster*, 2015 Ark. App. 530, 472 S.W.3d 151;[1] *Craig v. Craig*, 2010 Ark. App. 718, 379 S.W.3d 590; *Cochran v. Cochran*, 7 Ark. App. 146, 644 S.W.2d 635 (1983); *Dare v. Frost*, 2017 Ark. App. 451;[2] *Delacey v. Delacey*, 85 Ark. App. 419, 155 S.W.3d 701, (2004); and *Taylor v. Taylor*, 369 Ark. 31, 250 S.W.3d 232 (2007). However, none of these cases embrace the inclusion of future periodic lump-sum money for calculating present-day alimony.

In *Foster v. Foster*, 2016 Ark. 456, 506 S.W.3d 808, appellant's tax returns indicated he earned an average of $163,000 in 2011 and 2012. The court also noted that appellant had deposited an average of $12,000/month into the parties' joint checking account to pay for the family's monthly expenses. Based on this history, the circuit court determined his income for alimony was $10,363/month. Our supreme court affirmed the circuit court's rehabilitative alimony award.

---

[1]It should be noted that this opinion was subsequently vacated by the supreme court in *Foster v. Foster*, 2016 Ark. 456, 506 S.W.3d 808.

[2]It should be noted that this opinion was subsequently vacated by the supreme court in *Dare v. Frost*, 2018 Ark 83, 540 S.W.3d 281.

In *Craig*, *supra*, the circuit court used income earned by appellant's girlfriend to calculate appellant's income for an award of alimony. This court determined the circuit court abused its discretion when it acted improvidently and reversed and remanded the case to the circuit court.

In *Cochran*, *supra*, appellant was receiving social security and military disability payments, and the circuit court awarded appellee $250/month in alimony.[3] We stated, "The only question properly before this court is whether a state trial court can give consideration to disability income derived from United States Army and Social Security in determining the amount of alimony to be paid." *Cochran*, 7 Ark. App. at 146–47, 644 S.W.2d at 636. We held that it was proper for the circuit court to consider the appellant's disability income and social security benefits.

In *Dare v. Frost*, 2018 Ark. 83, 540 S.W.3d 281, Dare had a stock account, and he sold some stock and reinvested his gain in the stock market. Our supreme court held that because Dare did not realize the gain, the gain was not income for child-support purposes.

In *Delacey*, *supra*, appellant argued that the circuit court erroneously calculated his income for child-support purposes, and we agreed. Appellant was a physician who earned $246,424 in 2001 and $244,291.93 in 2002. At the trial for divorce, appellee wife called an expert witness to testify to appellant's income. For some reason, the expert witness did not use the 2001 and 2002 actual annual income-earned amounts; rather, the expert witness pulled out one month—November 2002 (which happened to be the appellant's second-

---

[3]The opinion did not contain any information regarding the amount of the appellant's income.

best month)—and opined that appellant's income for child-support purposes should be calculated by annualizing one month's salary. The circuit court adopted those figures in calculating appellant's income for child support, and we reversed and remanded on that issue. In doing so, we pointed out that common sense dictates that an average of appellant's historic monthly income over a year or two years will present a truer picture of his income than a calculation derived solely by a future annualization of his highest-earning months.

Finally, in *Taylor*, *supra*, the circuit court found that Kevin Taylor earned a sum of $555 per week in take-home pay and ordered him to pay $149 per week in child support to Kristi Taylor for the support of their two children. The circuit court further ordered Kevin to pay $110 per-week alimony to Kristi. Our supreme court affirmed the circuit court's child-support and alimony awards.

In summary, none of the cases cited by the majority support the proposition that future lump-sum annuity payments can or should be used to calculate present-day monthly alimony payments.

Since there is a lack of precedent for a circuit court to use future lump-sum annuity payments in the calculation of present-day alimony, I conclude that this is an issue of first impression. Arkansas Code Annotated section 9-14-201(4)(A) defines "income" as "any periodic form of payment due to an individual, regardless of the source, including wages, salaries, commissions, bonuses, workers' compensation, disability, payments pursuant to a pension or retirement program, and interest." In *Foster*, our supreme court stated, "We review issues involving statutory interpretation de novo on appeal, as it is for this court to determine what a statute means. . . . However, unless it is shown that the circuit court erred,

we will accept its interpretation as correct." *Foster*, 2016 Ark. 456, at 8, 506 S.W.3d at 814. Thus, the issue is whether William's five-year lump-sum payments (which continue until 2033) meet the definition of income as defined under Arkansas Code Annotated section 9–14-201(4)(A).

While this is a case pertaining to alimony, appellate courts have consistently held that precedent discussing income for child support is guidance to determine income for the calculation of alimony. *See Cole v. Cole*, 82 Ark. App. 47, 110 S.W.3d 310 (2003); *Schumacher v. Schumacher*, 66 Ark. App. 9, 986 S.W.2d 883 (1999). There are some key principles and similarities found in these cases. In *Delacey*, we stated, "It is the ultimate task of the trial judge to determine the *expendable* income of a child-support payor." 85 Ark. App. at 426, 155 S.W.3d at 705 (emphasis added). In *Grimsley v. Drewyor*, 2019 Ark. App. 218, 575 S.W.3d 636, we held that an unliquidated inheritance was not income for purposes of calculating child support because the spouse had not yet received any money from the inheritance. In *Dare, supra*, the supreme court held that an unrealized gain from the sale of stock is not income for child support. In *Hiett v. Hiett*, 86 Ark. App. 31, 158 S.W.3d 720 (2004), this court discussed future exercised stock options, and the holding therein is particularly relevant. In *Hiett*, James Hiett was employed by Walmart and was granted a certain number of unvested stock options each year. The stock options would vest in the future after specific time periods. In determining James's income for child-support purposes, the circuit court held that, in the future, when James exercised any stock option, the proceeds from the exercise of the stock option would be income for child-support calculations. What is crucial to understand is that the *Hiett* court held that the proceeds

from the future stock options is income in the year *when it is exercised* and not somehow "paid forward" to calculate present-day child support. This is one of the points made in Judge Harrison's dissent. In the future, when those five-year periodic annuity payments are made, Rhonda certainly has the right to petition the court and request a partial distribution of those future payments as alimony. At those future hearings, Rhonda can introduce evidence regarding the twelve factors set forth in *Foster*, the polestar of which is the financial need of one spouse and the other spouse's ability to pay. By using the terminology of *Delacey*, the future five-year payments until 2033 are not "expendable" today; of *Grimsley*, the future five-year payments have not been "received"; of *Dare*, the future five-year payments have not been "realized"; and of *Hiett*, the future five-year payments have not been "exercised." Hence, *Delacey*, *Grimsley*, *Dare*, and *Hiett* make it clear that those future five-year payments are not considered income today in the calculation of present-day alimony.

In conclusion, depending on the schizophrenic nature of the standard of review in these cases, I would find: (1) if the proper analysis of this case is the interpretation of Arkansas Code Annotated section 9-14-201(4)(A) (which I support), that under our *de novo* standard of review, the circuit court erred in finding that the future five-year annuity payments are income for present-day alimony payments; (2) if the proper analysis is clearly erroneous as set forth in *Moore*, *supra*, that the court's finding that the future five-year annuity payments are income for present-day alimony payments is clearly erroneous and against the preponderance of the evidence; and (3) if the proper analysis is an abuse of discretion, that

27

the court abused its discretion in finding that the future five-year annuity payments are income for present-day alimony payments. Thus, I would reverse and remand.

VIRDEN, J., joins.

*Bell & Boyd, PLLC*, by: *Karen Talbot Gean*, for appellant.

*Crane, Phillips & Rainwater, PLLC*, by: *Steve R. Crain*, for appellee.